## White and Newman v. A. B. Frank et al.

### No. 558.—Decided May 27, 1897.

**1. Unrecorded Deed—Innocent Purchaser.**

Warranties in a deed may be looked to in order to determine whether or not the grantee be an innocent purchaser, but are not conclusive.  (P. 70.)

**2. Same—Quit Claim.**

A deed conveying the grantor's interest in the property mentioned therein, but describing same as an undivided half interest, is a conveyance of such half interest and not a mere quit claim, and a grantee may be an innocent purchaser under such deed.  (Pp. 70, 71.)

**3. Same—Administrator's Sale.**

One may be an innocent purchaser at an administrator's sale and may even stand upon a better footing than a purchaser from an heir.  (P. 71.)

**4. Same.**

Whether a purchaser at an administrator's sale without notice of an unrecorded deed can be protected, does not depend upon the form of the deed, but if it appears from the whole transaction that it was the purpose to sell and the intention of the purchaser to buy the land itself, and not a mere chance of title, he may be an innocent purchaser.  (P. 71.)

**5. Same.**

The fact that a purchaser at administrator's sale paid for the land by crediting the price on her claim against the estate may preclude her, but not the purchaser from her for value, from claiming as a bona fide purchaser.  (P. 73.)

**6. Same—Fact Case.**

The apparent legal title to an undivided one-half interest in certain lands was in the estate of a decedent—a conveyance thereof by a previous owner being unrecorded —and it was so inventoried.  An order authorized the sale of "all the title and interest of the estate in and to" such half interest, and sale was reported of "all the right, title and interest of this estate in and to" the lands in question, and an order of court confirmed the sale of "an undivided half of" such lands, in pursuance of which the administrator conveyed "all the right, title and interest" of said estate in and to the lands so described.  The purchaser conveyed to another without notice of the unrecorded deed "all my interest in the following described land, being an undivided one-half interest in and to" the land with description thereof.  Held, that the proceedings evidenced an intention to sell an undivided half interest, and not a mere chance of the title thereto, as the property of the estate, and that the last purchaser was protected against the unrecorded deed.  (Pp. 70 to 73.)

**7. Improvement—Recovery of Half Interest.**

Intervenors who recovered an undivided half interest in the land in controversy were, in the absence of equities entitling defendants to more, chargeable with only one half the value of the improvements.  (P. 73.)

Error to the Court of Civil Appeals for the Third District, in an appeal from McCulloch County.

*M. Fulton* and *F. M. Newman*, for plaintiffs in error.

*Walter Anderson*, for defendants in error.

GAINES, Chief Justice.—A. B. Frank, one of the defendants in error, brought this suit against W. B. Dupree and others, who are also defendants in error in this court, to recover an undivided one-half inter-

est in four surveys of land granted to Valentine Hohmann as an immigrant under the colonization contract of Fisher and Miller. W. B. White and F. M. Newman, plaintiffs in error, intervened in the suit and claimed also an undivided one-half interest in the land. The defendants claiming separate parcels of the premises in controversy pleaded not guilty and set up a demand for compensation for improvements alleged to have been made by them in good faith.

There was a judgment for the plaintiff for an undivided one-half of the land and for the intervenors for the other half with a decree awarding compensation to the defendants for one-half of the value of their respective improvements against the intervenors. This judgment was reversed by the Court of Civil Appeals and judgment was rendered for the plaintiff for one-half and for the defendants for the other half and that intervenors take nothing by reason of their intervention.

The surveys in question consisted of 160 acres each and were granted to Valentine Hohmann as an immigrant of Fisher and Miller's colony. In 1847, before the issue of a certificate to him, Hohmann conveyed a half interest in the conditional grant of 640 acres to which he was entitled, to the German Emigrant and Railroad Company. The consideration expressed was the trouble and expense incurred by the company in his transportation and otherwise. This conveyance was filed in the General Land Office, but was never recorded until the 14th day of November, 1891.

On the 14th day of January, 1854, Hohmann conveyed the four surveys of 160 acres each to S. W. Cooley, who, on the 18th day of April of that year, conveyed an undivided one-half interest in the same to J. S. McDonald. McDonald having died, the half interest so conveyed was, in a partition in the Probate Court, set apart to his son and daughter, who sold and conveyed the same to the plaintiff below, A. B. Frank. Cooley having died and administration having been granted on his estate, his administrator returned an undivided half interest in the lands upon the inventory as the property of the estate. Successive administrations having been granted, the last administrator de bonis non obtained an order of the Probate Court for the sale of these lands and in pursuance of that order made a sale thereof, Mrs. E. A. Stribling becoming the purchaser. She conveyed the interest so acquired to W. B. White, one of the intervenors, who in turn conveyed a half interest in the same to F. M. Newman, the other intervenor.

The defendants showed title to an undivided half interest in the lands in controversy, from Fisher and Miller, and sought to show by a decree of the United States District Court for the District of Texas rendered in 1851 and certain other documents, that Fisher and Miller had acquired the right granted by Hohmann to the German Emigration and Railroad Company. In the view we take of the case, it is not important to inquire, whether this effort was successful or not. For when Mrs. Stribling purchased at the administrator's sale and when she conveyed to White the conveyance of Hohmann to the German Emigration

and Railroad Company was not of record, and if White is to be deemed an innocent purchaser, the right which was conveyed by that instrument was extinguished. This suggests what we deem to be the controlling question in the case as between the intervenors and the defendant: Was White a bona fide purchaser? There were several questions raised upon certain links in the chains of title exhibited by the plaintiff and by the intervenors, but in our opinion they were correctly determined by the Court of Civil Appeals, and we need only refer to the opinion of that court for the grounds upon which our conclusions upon the points so presented are based.

It will be seen from the foregoing statement, that when Hohmann conveyed the lands to Cooley, he had a clear, legal and equitable title to an undivided half thereof; so that Cooley acquired an indisputable title to that interest. This passed to McDonald by the conveyance of the one-half interest in the land, and since, as we have seen, the plaintiff acquired McDonald's interest, he was clearly entitled to recover.

After the conveyance to McDonald, Cooley had the apparent legal title to the other undivided half interest in the land. Cooley died and his wife become executrix of his will. She returned an inventory of his estate, upon which, as property of the estate, among other items, were the following: "An undivided one-half of Survey 1086 situated in Giddings District, Fisher and Miller Colony, in the name of Valentine Hohmann, containing 640 acres of land (the other half of said tract was deeded by S. W. Cooley to J. S. McDonald), valued at $320.00. An undivided half of Survey No. 1087 situated in Giddings District, Fisher & Miller Colony, in the name of Valentine Hohmann, containing 640 acres of land (the other half of said tract was deeded by S. W. Cooley to J. S. McDonald), valued at $320.00. An undivided half of Survey No. 1092 situated in Giddings Dist. Fisher & Miller's colony, in the name of Valentine Hohmann, containing 640 acres of land (the other half of said tract was deeded by S. W. Cooley to J. S. McDonald) valued at $320.00. An undivided half of Survey No. 1093 situated in Giddings District, Fisher & Miller's colony, in the name of Valentine·Hohmann; containing 640 acres of land (the other half of said tract was deeded by S. W. Cooley to M. S. McDonald) valued at $320.00." Each of the successive administrators who returned inventories returned the lands under substantially the same description; but the inventory of Alexander, the last administrator, corrected the description so as to show that each survey contained only 160 acres instead of 640, as originally reported.

After the correction of the inventory in the particular mentioned, Alexander, the administrator de bonis non, applied to the Probate Court for an order "to sell real estate made by D. M. Alexander Adm'r Est. S. W. Cooley," reciting that, "the only available property belonging to Estate is found in items 2-3-5-6-7-8-& 9 of Inventory filed March 19, 1875, & in items 1-2-3-& 4 of supplemental Inventory filed April 19, 1875, such property being the interest of the estate in & to following lands," and then proceeds to describe or mention Eleven tracts of land,

among which are the following: An undivided half of 160 acres of land Survey 1087 in Fisher & Miller's colony, V. Holman original Grantee; an undivided half of three other 160 acre tracts in Fisher & Miller colony, V. Holman original Grantee, Surveys Nos. 1086, 1092 & 1093."

An order was granted, which authorized the "administrator D. M. Alexander to sell at public or private sale for cash or on credit all the title & interest of the estate in & to * * * an undivided half of 160 acres of land, Survey 1087, in Fisher & Miller's colony V. Holman Original Grantee" "An undivided half of three other 160 acre tracts in Fisher & Miller's colony, V. Holman original Grantee, Surveys Nos. 1086, 1092 & 1093." There were eleven tracts altogether embraced in the order, but the description of all except those above mentioned is omitted in the statement of facts.

The report of sale recites, that the "administrator did cause the following described property belonging to the estate to be sold before the Court House door in Bexar Co. Texas, at public sale to the highest bidder on credit of 12 months as required by law, said property being all the right title and interest of this estate in & to 1st." Then follows mention of ten tracts among which is the following. "3rd. An undivided half of 4, 160 acre tracts, in Fisher & Miller's colony, Surveys Nos. 1086-1087-1092 & 1093, V. Holman original grantee, sold to Mrs. Stribling for $300.00."

The order of confirmation recites "that report was filed January 23, 1883, and that report had been filed more than five days, that legal notice of sale was given, and that the sale was made in accordance with law; also that court heard testimony as to the estate's title & interest in said land & of the fairness of the price at said sale, & it appearing to the Court that sales have been fairly made & for a fair price except two tracts sold to W. W. Robbins &c. It is ordered, adjudged & decreed by the Court that said sale be confirmed, to-wit: The sale to Eleanor A. Stribbling to: 1st. * * * , 2nd. * * *, 3rd. An undivided half of 4 160 acre surveys in Fisher & Miller's colony, Surveys Nos. 1086, 1087, 1092 & 1093, V. Holman Original Grantee, for the sum of $300.00. And ordering admor. to execute proper conveyance, to Mrs. E. A. Stribling, upon her complying with terms of sale."

The administrator's deed after reciting and setting out the order of confirmation, contains the following granting clause: "Now therefore I, D. M. Alexander in consideration of the premises have granted, bargained & sold and by virtue of the said order of Court & by these presents do grant bargain, sell and convey unto Eleanor A. Stribling all the right title & interest of this the estate of Simon W. Cooley, deceased, in & to the tracts & parcels of land above mentioned."

When intervenor purchased from Mrs. Stribling the conveyance from Hohmann to the German Emigration and Railroad Company had not been recorded. Newman testified that he purchased the land from Mrs. Stribling for White and himself jointly, that he found no adverse title of record except that to the half interest claimed by the plaintiff, Frank,

and that he had neither knowledge or notice of any adverse title to the other half. He also testified that he corresponded with Mrs. Stribling's agents, who assured him that her title was good and that the purchase money was paid upon delivery of the deed. White also testified as to the want of notice and as to the payment of the purchase money.

The intervenors pleaded in the petition of intervention, that they were bona fide purchasers, without notice of the title under which the defendants claimed. Were they such? They were clearly innocent purchasers, unless either the deed of Mrs. Stribling to White or that of the administrators of Cooley's estate to her, was of such a character as to deprive them of the right to make that claim. Her deed to White reads as follows: "Know all men by these presents, that I, Eleanor A. Stribling of said County and State in consideration of $480.00 to me in hand paid do hereby sell & convey unto W. B. White all my interest in the following described land in McCulloch County, Texas, being an undivided one half interest in & to 640 acres granted to Valentine Hohman & known as Surveys 1086, 1087, 1092 & 1093, of 160 acres each & Patented by Patent No. 169 Vol. 11, & being Abstracts No. 572, 573, 570 & 569, & for better description reference is hereby made to said patent & to the surveyors records McCulloch Co. said land being the same land conveyed to me by the estate of S. W. Cooley. To have & to hold said premises unto said W. B. White his heirs & assigns forever, without warranty." Just here we may remark, that while a warranty may be looked to in order to determine whether the grantee may be an innocent purchaser or not, it is by no means conclusive. A grantor with an undisputed title may decline to warrant it, while one with a doubtful claim may be willing to covenant for the repayment of the purchase money and interest in case the title should fail. Covenants of warranty are mere matters of contract in reference to the title, and may or may not be incidents of the conveyance. The conveyance is complete without them. They may throw light upon it, but do not determine its character.

It is held in Harrison v. Boring, 44 Texas, 255, in effect, that a deed which conveys merely the right, title and interest of the grantor, is quit claim deed only; and it follows that one which purports to convey the interest only of the grantor must be a deed of the same character. The granting clause in the deed in question reads—"do hereby sell and convey all my interest in the following described lands in McCulloch County, Texas, being an undivided one-half interest in and to," describing the lands. This is the same as if the grantor had said, that she conveyed an undivided one-half interest in the lands. The words first used—"all my interest"—taken in connection with what follows are evidently intended to define the quantity of her interest and not to limit the conveyance to such interest as she might hold in an undivided half of the lands. The grantor practically asserts, that she holds an undivided one-half interest in the lands, and that she conveys that in-

terest.  It does not purport merely to release her interest in the land, whatever that interest may be.  A grantee may be an innocent purchaser under such a deed.

But if the proceedings in the Probate Court and the administrator's deed, through which Mrs. Stribling acquired her title, are such as to show, that the administrator sold and she purchased only a claim to the lands and not a definite interest therein asserted to be in the estate, she could not have been a bona fide purchaser, and her grantee occupies no better position.  That one may be an innocent purchaser at an administrator's sale is no longer a question in this court.  Taylor v. Harrison, 47 Texas, 454.  Moreover, it is at least intimated, in the opinion in that case, that with respect to unrecorded conveyances and unknown equities, a purchaser from an administrator stands upon a better footing than a purchaser from an heir.  It is there said: "There is certainly a broad distinction between a sale by the heirs in their own right and one by an administrator in his representative character, under an order of court, for the payment of debts.  If the rights of the creditors are superior to those of the vendee holding by an unregistered deed, and as, unquestionably, a purchaser from the administrator holds in privity with the original vendor as fully as a purchaser under like circumstances from the sheriff, there can be no good reason to uphold the title of the one and to deny that of the other.  That the latter is within the protection of the statute, is not now an open question in this court."  But what is clearly decided in the case cited is, that whether a purchaser at an administrator's sale, without actual or implied notice of a prior unrecorded deed, can claim protection against the previous conveyance, does not depend upon the form of the deed; but that if it appears from the whole transaction, that it was the purpose to sell and the intention of the purchaser to buy the land itself, and not a mere claim upon it or a chance of title, he may be an innocent purchaser.  It can hardly be said to be the duty of an administrator when he knows of a defect in the title of his intestate to conceal the fact and to sell to an innocent purchaser to the injury of the grantee in a prior conveyance.  But when the apparent title is in the estate, and no defect in that title is known, we think it the duty of the court to order the sale and of the administrator to sell and convey the land in such manner as to protect the purchaser against an unknown and unrecorded title; not for the reason that any injury to the estate would result in case the title was defective, but because it is essential that purchasers should be able to rely upon the recorded title, in order that property to which the estate may have a perfect right may bring a fair price.  It is necessary to protect the rights of creditors for whose benefit the land is sold.  It being to the interest of the estate and of its creditors that the property should be sold according to the apparent title, when no defect is known, it is the duty of the court so to order it sold and of the administrator to sell it, and it should be presumed that such was the intention unless it af-

firmatively appear from the proceedings that it was merely a doubtful title or a chance of title which was sold.

We have seen, that the undivided one-half interest in the tracts was placed upon all the inventories as the property of the estate. Not only this, but in Alexander's report correcting his inventory as to the description of these lands, he says that the description of items 5, 6, 7 and 8 of his original inventory is incorrect "inasmuch as they set forth that estate is entitled to one-half of 640 acres in each case when in fact the surveys are not 640 acre tracts but 160 acre tracts & therefore estate is entitled to one-half of 160 acres in each case." In his application for an order of sale he points out by number these specific items as among the available assets of the estate and prays an order to sell the interest of the estate in them and other lands—reciting that that interest of the estate is an undivided half. The order of confirmation directs, that "said sale be confirmed, to-wit: the sale to Eleanor A. Stribling * * * to an undivided half of 4 160 acres surveys"—describing the tracts in controversy. The order of sale, the report of sale and the administrator's deed use the phrases "all the title and interest" and "all the right, title and interest in and to an undivided half," etc.

Looking then to the entire proceedings of the court in reference to the land, we find nothing to show that it was the purpose to sell a mere chance of title to one-half of the lands; and we think, therefore, there was nothing to give notice to the purchaser that he was buying a doubtful title, and that he could not rely upon the apparent title as disclosed by the conveyances on record. Our statutes in force at the time of those proceedings are the same as our present statutes upon the subject. They did not direct the form of the order of sale or of the conveyance. But in reference to the latter, they provided that "upon the purchaser complying with the terms of the sale, the executor or administrator shall execute and deliver to him a conveyance of the property so sold; if lands, reciting therein the decree confirming the sale and ordering the conveyance to be made, which conveyance of land so made shall vest the right and title that the testator or intestate had in the purchaser, and shall be prima facie evidence that all the requisites of the law have been complied with in making the sale." (Laws 1876, sec. 85, p. 114.) The statute declares the effect of the conveyance without reference to its form. By the words "a conveyance of the property so sold" is clearly meant a conveyance of the title, for there is no such thing as a conveyance of land in any other sense than as a conveyance of the title. Therefore, it is difficult to see how a conveyance of the right and title of an intestate by an administrator, under a statute which declares the effect of the conveyance to be to pass the right and title of the estate, should be in any respect less effective than a deed which in form conveys the property itself.

An administrator's sale is completed by the order of confirmation and a compliance on part of the purchaser with the terms of the offer. After an order of sale, and the acceptance of the bid, the approval of the court

is still necessary to the consummation of the agreement, and hence the confirmation should be looked to as cogent evidence of what was intended to be sold. When it shows, that the undivided one-half interest was sold as the property of the estate, and it appears that the administrator asserted title to that interest and asked an order to sell it, we do not think, in view of statute which we have quoted, that the expression "all the right title and interest of the estate" in the land, or other like expressions in the order and report of sale and in the deed, should limit the conveyance to a mere transfer of the chance of the title.

The case of Hitchler v. Scanlan, 39 S. W. Rep., 633, in which we refused a writ of error, serves to illustrate our views upon this question. In that case a lot of land belonging to the testator had been subdivided by him into small lots, and a number of them had been sold in his lifetime. His estate having been administered in the Probate Court and a partition ordered, the commissioners reported that they were unable to divide this property among the heirs because they could not ascertain what part of it belonged to the estate. Under these circumstances "the right title claim and interest of the heirs and devisees" in the lot were ordered to be sold and were sold. It was held that the purchaser was not an innocent purchaser, as against persons to whom the testator had conveyed subdivisions of the tract. The proceedings showed that it was not the purpose to sell the lands that the testator had conveyed, but merely so much of the original lot as remained unsold—whatever that might be. The purchaser took the chance of the title as to such parcels as had been previously conveyed and could not be a bona fide purchaser. It was upon this ground that we sustained the ruling of the Court of Civil Appeals in the case last cited and refused the writ.

In the present case, the estate had an apparent title to one undivided half of the lands, it was asserted as a genuine title and was sold as such, and we think, one may claim through the sale as an innocent purchaser.

The fact that Mrs. Stribling paid for the land by crediting the purchase money upon a claim she held against the estate may have precluded her from claiming as a bona fide purchaser for value—but it does not preclude her grantee who paid value to her.

It follows that in our opinion White and Newman were innocent purchasers and were entitled to recover one undivided half of the land.

The defendants also claimed in the Court of Civil Appeals that they were entitled to compensation for the whole value of their improvements made in good faith, and not to one-half as awarded by the trial court. In the view taken of the case by the Court of Civil Appeals it was not necessary to pass upon this question and they did not determine it. The intervenors recovered only one-half of the land, and hence in our opinion were properly chargeable with one-half only of the improvements. If there were any equities which entitled the defendants to more, they fail to show them.

The judgment of the Court of Civil Appeals is reversed and that of the District Court affirmed.

*Judgment of Court of Civil Appeals reversed.*
*Judgment of District Court affirmed.*