PADGITT et al. v. STILL et al.   (No. 1741.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 28, 1917. Rehearing Denied March 15, 1917.)

1. HUSBAND AND WIFE ⬥133(7)—SEPARATE ESTATE—SUFFICIENCY OF EVIDENCE.

A jury's finding that land was purchased by a husband with his wife's money *held* sustained by the evidence.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 491.]

2. VENDOR AND PURCHASER ⬥230(1)—BONA FIDE PURCHASER — NOTICE OF DEFECTIVE TITLE—PROVISIONS OF WARRANTY.

While absence of warranty covenants in a deed does not charge the purchaser with notice of outstanding equities, deeds warranting grantor's title to two-thirds of a tract and to the remainder during his natural life charged the grantees, and persons claiming under them, with notice of the grantor's wife's outstanding equity in one-third of the property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–504, 507, 510, 512.]

Appeal from District Court, Rusk County; W. C. Buford, Judge.

Suit by Willie Day Padgitt and others against B. R. Still and others. Judgment for defendants, and plaintiffs appeal. Judgment reformed, and cause remanded.

As commenced by a petition filed September 23, 1913, this suit was by appellant Willie Day Padgitt, joined by her husband, against appellees B. R. Still, Mrs. S. M. Bounds, and Mrs. Frances Adams. By an amended petition filed October 11, 1915, appellees Henry Moore, J. C. Hale, and N. J. Hales were made parties defendant. The suit was one of trespass to try title, the land involved being 435.2 acres of the Levi Landers survey in Rusk county. By a petition filed May 13, 1915, appellees D. W. Fulton and G. H. Stovall intervened in the suit, claiming they owned an undivided one-half of the land. The appeal is from a judgment, so far as it is material to state it, awarding Still, D. W. Fulton, and G. H. Stovall a recovery of the land as against appellants and certain of the appellees.

It appears from the record that one Wilbanks owned the land September 26, 1854, when he conveyed it to F. M. Stovall, then the husband of Martha Jane Stovall, whom he married in 1849 or 1850 when she was Martha Jane Fulton, a widow, and who died in 1856 or 1857 intestate, it seems, leaving surviving her her then husband, said F. M. Stovall, and a child by him, to wit, appellee F. H. Stovall, and two children by her first husband, to wit, Martha Jane, who married one Taylor, and Samuel M. Fulton, who died in 1861 leaving a widow but no child.

Appellants claimed title to the land in controversy through deeds as follows: From Marshal Wilbanks and his wife to F. M. Stovall, date September 26, 1854; from F. M. Stovall to B. J. Cone, date December 20,

1870, but reciting that it was intended as a substitute for deed made by F. M. Stovall to said Cone in 1861; from Cone to G. A. Ray, date October 8, 1862; from Ray to Cone, date September 21, 1866; from Cone to Barton, date December 8, 1870; from Barton to Mary I. Carr, date January 5, 1873; from Carr to F. M. Ervay, date August 4, 1873; from Ervay to J. A. Ross, date October 2, 1876; from Ross to Mrs. Sallie McBride, date November 6, 1876; from Sallie McBride, joined by her husband, to Miss T. M. Doss, date February 2, 1877. In 1879 Miss Doss married W. H. Day, and in 1889, after his death, married J. C. Lea, who died in 1904. Mrs. Lea died intestate, it seems, April 4, 1906, leaving as her only heir her daughter the appellant Willie Day Padgitt, who had married her coappellant J. Tom Padgitt June 15, 1904.

Appellee Still claimed title under a deed from Martha Jane Taylor, joined by her husband, dated August 14, 1903. Appellee D. W. Fulton, a son of Mrs. Stovall's first husband by a former wife, claimed an interest in the land as an heir of his half-brother Samuel M. Fulton, and G. H. Stovall claimed an interest therein as an heir of his mother, said Martha Jane Stovall.

Snodgrass, Dibrell & Snodgrass, of Coleman, for appellants. John R. Arnold and Chas. L. Brachfield, both of Henderson, for appellees.

WILLSON, C. J. (after stating the facts as above). So far as it is against appellants and in favor of appellees Still, D. W. Fulton, and G. H. Stovall, the judgment is based on findings of a jury: (1) That F. M. Stovall paid for the land with money belonging to the separate estate of his wife; (2) that appellants and those under whom they claimed, at the time they respectively purchased it, had notice that F. M. Stovall "did not claim to be the full and absolute owner of the land" when he conveyed it to Cone; and (3) that, had appellants and those under whom they claimed "made reasonable investigation," they "could have ascertained that the heirs" of said F. M. Stovall's wife owned an interest in the land.

If the findings specified were authorized by evidence, the judgment is not erroneous in the particular stated; for, while the legal title unquestionably was in F. M. Stovall, and appellants had acquired same, the findings showed the equitable title to be in his wife, and that said appellees had acquired same, and further showed that appellants and those under whom they claimed at the time they acquired the legal title had notice of the fact that the equitable title was in the heirs of F. M. Stovall's wife.

The findings, however, are attacked by appellants as without the support of evidence.

[1] Consideration of the testimony has con-

vinced us that the contention, so far as it applies to the finding that the land when purchased by Wilbanks was paid for with money belonging to F. M. Stovall's wife's separate estate, should not be sustained. It was shown that in 1849 or 1850, when F. M. Stovall married Mrs. Martha Jane Fulton, then a widow, he was a Methodist "circuit rider" about 35 years of age, with no property except a horse, saddle, and bridle worth about $100, and with no income except his salary as a preacher. It was further shown that Mrs. Fulton then owned property worth over $9,000, consisting of $800 in money, an interest in land in Arkansas, 9 slaves, 6 mules, 2 or 3 horses, 6 yoke of oxen, 2 or 3 wagons, and 75 head of cattle. It appeared from a recital in the deed from Wilbanks that the land in controversy was conveyed to F. M. Stovall September 26, 1854, in consideration of $1,465 in cash paid by him to Wilbanks. It was shown that when said F. M. Stovall's wife died in 1856 or 1857 she left, of the property she owned when she married him, 7 slaves, 2 mules, 1 horse, 1 wagon, and 2 yoke of oxen. It was further shown that the only income F. M. Stovall had, except that arising from his wife's property, after he married until his wife's death, was his salary as a preacher. The reasonable conclusion from the circumstances stated was that the purchase price of the land was paid to Wilbanks either out of money F. M. Stovall received as revenues from the separate estate of his wife, or out of money, and the proceeds of sales of property, she owned when she married him. It appearing that the $800 Mrs. Fulton owned when she married Stovall had been used in some way, and that 2 of the slaves, 4 of the mules, 1 or 2 of the wagons, 4 yoke of the oxen, all the cattle, and her interest in the land in Arkansas, had in some way been disposed of during her marriage with Stovall, we think the inference that F. M. Stovall used some to pay for the land was a fair one and one the jury had a right to make, and particularly so in view of testimony in the record indicating that, while the land was not conveyed to F. M. Stovall until 1854, it was purchased cf Wilbanks within a few weeks after he married Mrs. Fulton. If it was so purchased, and then paid for, an inference that it was paid for with rents and revenues from Mrs. Stovall's separate estate accruing after her marriage with Stovall could not reasonably be indulged. The only other inference from the testimony, if the land was then paid for, was that it was paid for with money and property belonging to Mrs. Stovall in her separate right.

[2] The evidence relied upon to show that appellants had notice that the equitable title to the land was in Mrs. Stovall at the date of her death consisted alone of recitals in deeds in their chain of title as follows: From F.

M. Stovall to Cone, from Cone to Ray, from Ray back to Cone, and from Cone to Barton. The recitals were in the warranty clauses. In each of the deeds the warranty was general as to a two-thirds interest in the land. In the deeds from F. M. Stovall to Cone and from Cone to Ray the warranty as to the other one-third interest was "during F. M. Stovall's natural life" only. In the deed from Ray back to Cone it was recited that it was intended "only as a quitclaim" to one-third, and in the deed to Barton from Cone the warranty as to one-third was only against himself and his heirs.

We are not without doubt as to the answer which should be made to the question presented, to wit, were the recitals sufficient to charge persons claiming under the deeds with notice of the equitable title in Mrs. Stovall at the date of her death or not? but have concluded that they were as to a one-third interest in the land.

The absence of covenants of warranty in a deed conveying land, as contradistinguished from one conveying merely the vendor's interest in land, would not be suggestive to the purchaser that the vendor's title was imperfect. Such covenants are not a part of the conveyance, but constitute a separate contract between the parties. The absence of such covenants in a deed, therefore, is no more indicative of a doubt on the part of the vendor of the sufficiency of his title than it is of confidence on the part of the vendee of its sufficiency, and cannot operate to charge the purchaser with notice of equities in third persons. Richardson v. Levi, 67 Tex. 359, 3 S. W. 444.

But where, as here, deeds relied upon as evidence of title in the litigant contain such covenants, same may, though constituting separate contracts, be looked to in determining the bona fides of the purchaser. White v. Frank, 91 Tex. 66, 40 S. W. 962.

It appears from the warranty clause in the deed from Stovall to Cone that Stovall was willing to fully warrant the title to two-thirds of the tract of land he conveyed to Cone, but was unwilling to warrant the title to the other one-third further than during his (Stovall's) "natural life." It seems to us that such unwillingness would have suggested to a prudent person that Stovall regarded his title to one-third of the land as at least doubtful, so far as it was for more than a life estate therein, and should have caused such a person to make inquiry to ascertain whether Stovall owned a greater estate than that in it or not. If it would, then Cone and the purchasers claiming under him should be held to have had notice, as to one-third of the tract, that the equitable title thereto was in Stovall's wife at the date of her death. Diligent inquiry would have disclosed that, as is shown by the record and as was found by the jury; and, being put on inquiry by the recitals referred to in deeds they claimed under,

the law would charge them with knowledge of all the facts such inquiry disclosed as existing.

We are of opinion therefore the judgment, so far as it determines the title to the land as between appellants and Still and D. W. Fulton and G. H. Stovall, and it is not complained of in other respects, should be so reformed as to award appellants a recovery of an undivided two-thirds thereof, and to appellees Still, D. W. Fulton, and G. H. Stovall, in the proportions determined by the court below, an undivided one-third thereof; and that as so reformed the judgment should be affirmed and the cause remanded to effect the partition prayed for by the parties and ordered by said court.

The contention made by appellees Still, D. W. Fulton, and G. H. Stovall, in cross-assignment, that the trial court erred when he overruled their exception to appellants' petition on the ground that it appeared therefrom that Mrs. Padgitt sought a recovery of the land as the heir of her mother, and that it did not appear therefrom whether an administration on her mother's estate was pending or not, nor whether there was a necessity for such an administration or not, is overruled. It appeared from an allegation in a supplemental petition filed by appellants that an administration was not opened on Mrs. Padgitt's mother's estate, and further appeared that more than seven years elapsed between the date of the death of Mrs. Padgitt's mother and the date this suit was commenced.

The judgment will be reformed and the cause remanded, as indicated above.