## BENTON LAND CO. v. JOPLING.
### (No. 992–4856.)

Commission of Appeals of Texas, Section A.
Dec. 14, 1927.

**1. Deeds ⚷⟳25—Instrument whose language fairly implies purpose to convey is not mere quitclaim deed.**

If language of instrument as a whole is such as to reasonably imply specific purpose to effect transfer of particular rights in respect to land described, instrument should be treated as conveyance of rights themselves, and not as a mere quitclaim, though in some respects language of instrument may be appropriate to quitclaim deed.

**2. Vendor and purchaser ⚷⟳224—Instrument granting, selling, conveying and forever quitclaiming all grantor's "right, title, and interest," grantee assuming purchase-money debt, held not mere quitclaim, precluding subsequent purchasers from claiming good faith.**

Instrument by which grantor did "grant, sell, and convey and forever quitclaim" all his "right, title, and interest" in tract of land, in consideration of grantee's assumption of payment of purchase-money note thereon, *held* conveyance of all grantor's right, and not mere quitclaim deed, presence of which in chain of title would preclude subsequent purchaser from asserting good faith as against claim that grantor was mere trustee.

Error to Court of Civil Appeals of Eleventh Supreme Judicial District.

Action by S. E. E. Jopling against the Benton Land Company and others. Judgment for defendants was reversed and rendered by the Court of Civil Appeals (292 S. W. 958), and defendant named brings error. Judgment of Court of Civil Appeals reversed as to named defendant, and that of trial court affirmed.

Pratt & Dunnaway, Patterson & Grantham, and Butts & Wright, all of Cisco, for plaintiff in error.

D. M. Alexander and Ben S. Baldwin, both of Fort Worth, for defendant in error.

HARVEY, P. J. On March 10, 1882, Miss S. E. E. Vincent, who is now Mrs. S. E. E. Jopling, the defendant in error, duly made application to purchase from the state a tract of 320 acres of school land situated in Eastland county. The application was approved, and the land awarded to her; and for the unpaid purchase money therefor she executed to the state her promissory note for $304, dated March 10, 1882, due 20 years after date. According to her testimony, she "lent" the land to her brother, J. A. Caldwell, in the year 1891, for the purpose of enabling him to borrow money on the land. She testifies that it was verbally agreed between herself and brother that she should remain the real owner of the land, and that he would deed the land back to her whenever she demanded that he do so. In pursuance of this agreement, she executed an instrument, on June 4, 1891, wherein it is recited that, for and in consideration, among other things, of the assumption by J. A. Caldwell of the payment of the above-described purchase-money note by the state, she did, by that instrument, "grant, sell, and convey, and forever quitclaim" unto Caldwell all her "right, title, and interest" in said 320-acre tract of land. This instrument was duly recorded in Eastland county on June 17, 1893. J. A. Caldwell never borrowed any money on the land, but, on August 17, 1895, he executed to Mary E. Caldwell an instrument, in which it is recited that, for and in consideration, among other things, of the assumption by Mary E. Caldwell of the payment of the purchase-money note for $304 held by the state, as hereinabove described, he (the said J. A. Caldwell) did thereby "grant, sell, and convey, and forever quitclaim" unto Mary E. Caldwell all his "right, title, and interest" in said tract of 320 acres of land. This instrument was duly recorded in Eastland county on June 8, 1896. Thereafter Mary E. Caldwell paid in full the balance of the purchase money due the state, and, on March 4, 1904, patent for the land was duly issued to her, in her name, as assignee of S. E. E. Vincent. Afterwards the Benton Land Company, the plaintiff in error,

---

⚷⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

became the purchaser of the land through and under Mary E. Caldwell, under such circumstances as to invest said company with the character of bona fide purchaser for value, unless the instrument executed by J. A. Caldwell to Mary E. Caldwell, as above described, is a quitclaim deed. After the Benton Land Company bought the land, Mrs. Jopling, formerly Vincent, brought this suit for the perpose, among other things, of enforcing her equitable rights in the land which grew out of the transaction between her and her brother, J. A. Caldwell, as has been described above. She also asserts other equitable rights in the land, but, inasmuch as her right to any relief whatever, as against the Benton Land Company, is contingent upon the deed from J. A. Caldwell to Mary E. Caldwell being a quitclaim deed, we shall not undertake to state further details of the case, and shall confine our attention to that question. The Court of Civil Appeals reversed the judgment which was rendered by the trial court in favor of the several defendants in the suit; and the Benton Land Company, alone, prosecutes this writ of error.

[1] Although, in some respects, the language of an instrument may be appropriate to a quitclaim deed, such language does not fasten upon the instrument the character of a mere quitclaim deed, if other language contained in the instrument fairly indicates a different character. If the language of the instrument, as a whole, is such as reasonably to imply a specific purpose on the part of the parties to effect a transfer of particular rights in respect to the land described therein, the instrument, so far as such particular rights are concerned, should be treated as purporting a conveyance of the rights themselves, and not as a mere quitclaim. This we regard as the underlying principle of the holding, so often made, to the effect that, if the language of the instrument fairly implies a purpose to convey the land itself—i. e. the particular rights constituting ownership—the instrument is not a mere quitclaim deed. See Cook v. Smith, 107 Tex. 119, 174 S. W. 1094, 3 A. L. R. 940; Garrett v. Christopher, 74 Tex. 453, 12 S. W. 67, 15 Am. St. Rep. 850; Peck v. Hensley, 20 Tex. 678; Richardson v. Levi, 67 Tex. 364, 3 S. W. 444; Taylor v. Harrison, 47 Tex. 461, 26 Am. Rep. 304; Harrison v. Boring, 44 Tex. 255; Love v. Berry, 22 Tex. 378; White v. Frank, 91 Tex. 70, 40 S. W. 962.

[2] It is believed that the language of the instrument under consideration reasonably implies a purpose on the part of the parties to the instrument to effect a transfer, from J. A. Caldwell to Mary E. Caldwell, of the particular rights which accrued to S. E. E. Vincent under the contract of purchase from which emanated the purchase-money note held by the state. Where the language of a deed, as here, reveals that conveyance of all the right, title, and interest of the grantor, in the given tract of land, is made in consideration of the assumption, by the grantee, of the payment of an outstanding purchase-money debt against the land, a specific purpose to effect a transfer of all rights, respecting the given tract, which are subject to such purchase-money debt, is naturally and reasonably implied. That is what the ordinary man would understand to be the purport of such an instrument; and a reading of the instrument would not serve to warn him of undisclosed rights in third persons.

The instrument under discussion is not a mere quitclaim deed; and therefore its presence in the chain of title does not deprive the Benton Land Company of the character of bona fide purchaser. The same also is true with regard to the instrument executed by S. E. E. Vincent to J. A. Caldwell.

We recommend that the judgment of the Court of Civil Appeals reversing the judgment rendered by the trial court in favor of the Benton Land Company be reversed, and that the judgment of the trial court in that respect be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.