**HEREFORD LAND COMPANY et al.,**
**Appellants,**

**v.**

**GLOBE INDUSTRIES, INC., Appellee.**

**No. 102.**

Court of Civil Appeals of Texas.

Tyler.

Feb. 4, 1965.

Rehearing Denied March 4, 1965.

Philip I. Palmer, Palmer & Palmer, Dallas, for appellants.

Vernon O. Teofan and Paul E. Lokey, Ungerman, Hill, Ungerman & Angrist, Dallas, for appellee.

MOORE, Justice.

This is an appeal from the denial of a temporary injunction. Appellant, Hereford Land Company, a corporation, brought this under the provisions of Section 4, Article 4642, Vernon's Ann.Tex.St. seeking to enjoin appellee, Globe Industries, Inc. and J. E. Decker, Sheriff of Dallas County, Texas, from selling under execution a certain apartment house located at 3400 Cole Avenue in Dallas and praying for judgment removing cloud cast on the title by reason of the attempted execution and sale. Dr. Doyle Sharp, president of Hereford, intervened and adopted Hereford's pleadings.

At the hearing on the application for a temporary injunction pendente lite, appellants tendered proof of the following facts which will be hereinafter set forth in chronological order. Appellee offered no testimony.

Appellant, Hereford Land Company, was the owner of the land situated at 3400 Cole Avenue and was desirous of building a rather large apartment house thereon. Officers and directors of the corporation were Doyle L. Sharp, Thomas A. Bowman and Ray Dault. In attempting to arrange the financing, the officers and directors learned that because of the lack of net worth of the corporation the corporation could not obtain a loan for the permanent financing of the project. On December 12, 1961, Bowman, Dault and others made an application for permanent financing to Jones-Cox Mortgage Company in the amount of $107,500.00. On December 18, 1962, Jones-Cox issued a commitment for the loan to Sharp, Bowman and Dault. Neither the application nor the commitment was made in the name of the corporation, nor was any mention made of the corporation. On December 21, 1961, the corporation, through its officers, arranged for a corporate loan for temporary financing of the construction with Republic National Bank of Dallas in the amount of $107,500.00 for which the corporation executed its note and deed of trust as security. Construction was commenced and the structure was completed. Due to the fact that Jones-Cox Mortgage Company would not handle the permanent financing for the corporation, the president and secretary of Hereford Land Company, without any previous authorization, executed a deed on behalf of the corporation conveying the land to its officers and directors, Sharp, Bowman and Dault, who then borrowed the money for the permanent financing from Jones-Cox and executed a note and deed of trust to Jones-Cox for the sum of $107,500.00 which was then used to repay Republic National Bank. No consideration was paid by either Sharp, Bowman or Dault to Hereford Land Company for the deed to the property. They made no payments on the note to Jones-Cox Mortgage Company. The payments were made by either Hereford or by Apartment Information Bureau for the account of Hereford. Neither Sharp, Bowman or Dault received any rentals from the property. Hereford paid for all expenses and upkeep on the property. There was no agreement between Sharp, Bowman and Dault as individuals or as officers and directors of Hereford Land Company as to the transfer of the property from Hereford to them.

While the legal title to the property was thus in Sharp, Bowman and Dault, Globe Industries, Inc. recovered a judgment against Ray Dault and Mastercraft Aluminum Products Company in the amount of $4,666.12. The judgment was abstracted and filed on September 4, 1963.

The loan with Jones-Cox Mortgage Company went into default in December, 1963, at which time the Board of Directors of Hereford met and decided to sell the land in order to pay the indebtedness and au-

thorized its president, Sharp, to execute the deed. On December 20, 1963, Sharp, Bowman and Dault sold the property to Michael V. McLane, who assumed the original Jones-Cox note in the amount of $107,500.00 and in addition thereto executed his vendor's lien note payable to Sharp, Bowman and Dault in the amount of $8,000.00, securing same by subordinate deed of trust. For some reason, unexplained by the record, Carol Dault, the wife of Ray Dault, also joined as a party to this transaction.

Globe Industries, Inc. posted notice of foreclosure on the property at 3400 Cole Avenue in April, 1964, for execution sale on May 5, 1964. Appellants filed this suit to remove cloud on its title and to restrain the sale under execution on March 27, 1964.

Appellants contend that the trial court abused his discretion in refusing to grant a temporary injunction pending the final outcome of the litigation because the above facts conclusively prove, or at least make a prima facie case showing that a resulting trust was created in favor of the corporation, Hereford, and that Dault held only a bare legal title, while the equitable title remained in Hereford and that Dault therefore had no interest therein subject to execution; hence, a sale under execution would amount to a cloud on Hereford's title.

Appellee, on the other hand, contends that appellants have failed to make a prima facie case which would entitle it to a temporary injunction, because the deed showed upon its face that Dault and others paid a valuable consideration in the amount of "Ten and No/100 Dollars cash, and other good and valuable consideration" and that this, together with the fact that the deed contained Internal Revenue Stamps indicating a consideration of between $100.00 and $500.00 is sufficient to show a conveyance of both legal and equitable title, thus rebutting the prima facie case of a resulting trust in favor of Hereford and hence the trial court correctly refused the temporary injunction. Appellee further contends that the facts are insufficient to show a resulting trust, and that if any trust was created, same was an express trust, and not being reduced to writing same was void because of the Texas Trusts Act. The primary question presented for review is whether or not the trial court abused his discretion in refusing to grant the application for temporary injunction.

■ The rule is well established in this state that the granting or refusing of a temporary injunction is within the sound discretion of the district court, and that the court's action will not be disturbed on appeal unless it clearly appears from the record that there has been an abuse of such discretion. It is equally well established that the trial court's discretion is not unlimited and does not extend to the erroneous application of the law to undisputed facts. Harding v. W. L. Pearson & Co., (Tex.Com.App.) 48 S.W.2d 964; Stowe v. Baldwin, (Tex.Civ.App.) 298 S.W.2d 943.

■ In approaching the problems before us it will be necessary to re-examine the facts which were presented to the trial court. The basic question presented by the facts involves a question of title. Insofar as the record reveals, the corporation never at any time authorized its officers to make a conveyance of the title. The officers simply made such a conveyance on their own volition and without any written or oral agreement on the part of either the corporation or any of the grantees in the deed. As pointed out before, no consideration was actually paid to the corporation although the deed recited consideration. No express agreements having been made, we therefore do not agree with appellee's contention that the trust, if any, was an express trust. In our view, the undisputed facts are sufficient to show that even though legal title passed to the officers and directors, it passed in trust for the corporation and by operation of

law created a resulting trust in favor of the corporation, the effect of which was to leave the equitable title in Hereford Land Company. The corporation's title was thus a superior title, superior to the world, subject only to the mortgage.

"A suit to quiet title or to remove a cloud can be maintained only by a person having some interest in the property involved. A fee simple or otherwise incontestable title is no longer essential to relief. Under the blended system of law and equity, a holder of either legal or equitable title can maintain a suit to remove a cloud." 47 Tex.Jur.2d, para. 12, pages 541, 542.

■ It is undisputed that the land was originally owned by Hereford prior to the time title was conveyed to its officers and directors. If the conveyance was a bona fide gift or was based upon valuable consideration the deed would convey both the legal and equitable title. There was no evidence showing a gift was intended. Therefore, if the deed was not supported by consideration, such a conveyance by the corporation to its officers would amount to nothing more than a conveyance of the bare legal title, with the equitable title remaining in the corporation.

■ Appellee contends, however, that appellants should not have been permitted to show, nor should the court have considered evidence on the lack of consideration because such evidence would be in violation of the parol evidence rule and the Texas Trusts Act, and that in the absence of such testimony the question of trusts was not presented. Our courts have held that parol evidence is admissible to prove the real consideration for a deed. Bradshaw v. McDonald, 147 Tex. 455, 216 S.W. 2d 972; Shannon v. Shannon, (Tex.Civ. App.) 231 S.W.2d 986, 989.

■ The Texas courts have many times held that the legal and equitable ownership of property may be vested in different persons, especially in situations where a question of trusts arises. Trusts may be divided into two classes, express and implied. It has been said that an express trust arises either by express agreement or by the direct and positive acts of the parties by some writing or deed. Wacasey v. Wacasey, (Tex.Civ.App.) 256 S.W. 1020, 1022.

■ When there has been no explicit language importing an intention to create a trust, a court of equity may infer that such was the intention of the parties, either from what they said or from what they did. The courts and the authors sometime refer to this latter class of trusts as implied trusts or constructive trusts or resulting trusts.

"According to the American Law Institute, 'A resulting trust differs from an express trust in the manner of its creation, and in the nature and extent of the duties of the trustee.' It is a species of implied trust—one that arises from what the parties did, not from what they said." 42 Tex.Jur., page 635; Elbert v. Waples-Platter Co., (Tex.Civ.App.) 156 S.W.2d 146.

"Where, without receiving any consideration and with no intention to make a gift, A transfers property to B, a trust results to A, though there is no proof that B agreed to hold the property in trust." 57 Tex.Jur.2d, para. 49, pp. 436, 437; Jopling v. Caldwell-Degenhardt, (Tex.Civ.App.) 292 S.W. 958, rev'd on other grounds, Benton Land Co. v. Jopling, Tex.Com. App., 300 S.W. 28; Shannon v. Shannon, supra; Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184.

■ The acts and conduct of the parties when taken together with all the other facts and circumstances tends to establish a prima facie case showing the equitable title to be in Hereford Land Company and hence presents questions of title which should be finally determined by the court in the suit to remove cloud. A case which we consider to be in point is the

case of Weart v. Mahone, (Tex.Civ.App.) 176 S.W.2d 197, 202, wherein a similar situation was presented and the court upon reversing the case and granting the temporary injunction said:

"We are inclined to agree with plaintiff that the holding made in Stolte v. Karren, Tex.Civ.App., 191 S.W. 600, 605, writ refused, lays down an exception to the general rule that the action of the trial court in granting or refusing a temporary injunction will be disturbed upon appeal only when it appears from the record that he has abused his discretion. In that case the trial court declined to grant a temporary injunction to sell land under execution, and on appeal the court held that, by reason of Section 4, Article 4642, where the plaintiff sought to have the sale enjoined, and she made out a prima facie case that she owned the title to the land sought to be sold as belonging to another, the court erred in refusing to grant the injunction. Said the court of the evidence presented to the trial on the hearing: 'This presents a material issue of fact which appellant (the plaintiff) has the legal right to have determined by the jury upon the trial of the main suit and not predetermined in an ancillary proceeding by the court in chambers. She (plaintiff) has the further legal right to have the status of the property involved in this litigation remain as it is until the suit is determined upon its merits.' The court in effect held that Section 4 of Art. 4642 established as the public policy of the State that the stability and certainty of land titles is of greater moment than the prevention of inconvenience to creditors. But in order for a plaintiff to come within the exception established by the Stolte case, such plaintiff must have exhibited in the trial court upon the hearing such evidence as would constitute a prima facie case upon a trial on the merits."

It has likewise been held that a judgment creditor or an officer of a corporation who holds only the legal title for the corporation cannot defeat the corporation's title by levying execution and purchasing the property at execution sale. Scott v. Farmers' & Merchants' Nat. Bank, 97 Tex. 31, 75 S.W. 7.

While we make no attempt to pass on the merits of the case, it appears to us that since the undisputed facts established a prima facie case showing superior equitable title to be in Hereford Land Company, a temporary injunction pendente lite should have been granted. If Dault held nothing but the naked legal title, he had no interest in the property on which appellee could levy and sell at execution, and to allow such sale would result in nothing but a cloud on appellants' title.

" * * * our system of procedure is such that legal rights cannot be finally determined upon a hearing relating to the wisdom or expediency of issuing a status quo order. Deliberate action is essential for the accurate determination of legal rights and upon occasion this can be secured only by issuing a temporary decree protecting a status quo. Ordinarily, the hearing upon the temporary injunction is not a substitute for, nor does it serve the same purpose as the hearing on the merits." Southwest Weather Research, Inc. v. Jones, 160 Tex. 104, 327 S.W.2d 417, 421.

It is our opinion that the trial court was in error in his application of the law to the undisputed facts and that the judgment must therefore be reversed.

For the reasons given in our discussion, the judgment will be reversed and the trial court instructed to order the issuance of a temporary injunction as prayed for by appellants.

Reversed and remanded, with instructions.