ELIZA WEST ET AL. v. GEO. H. HERMAN ET AL.

Decided June 26, 1907.

**1.—Deed—Construction.**

A general clause in a deed referring to an erroneous source the title of the interest passed by the granting clause, will not serve to restrict the interests thus passed. Thus, a deed by several grantors which conveyed "all our rights, titles, interest, claims or demands" in a certain tract of land, "the same being our shares in our inheritance of the estate of B.," the father of the grantors, will pass also the interests of the grantors inherited from their mother.

**2.—Same—Same—Parol Evidence.**

Where the meaning of words or phrases used by parties to a deed is clear and unambiguous the same can not be overthrown by a resort to parol testimony to show that the parties actually intended some other meaning.

**3.—Same—Ambiguity.**

The rule that a deed must be construed most strongly against the grantor can have no application where its terms are ambiguous and it is alleged that the parties to the deed used the language in a permissible but special sense.

**4.—Appointment of Receiver—Discretion of Court.**

Where parties sue for an interest in land from which petroleum is being taken by the defendant the court has the power, in the exercise of a sound discretion, to appoint a receiver for the property.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Ewing & Ring, Rowe & Rowe, Sam & Bradley, Saliway & McAskill* and *John A. Kirlicks*, for appellants.—The heirs of the deceased daughter Margaret did not, by their deed to Isaacks, convey the interest which she had inherited in her mother's community half of the land, nor the interest which she had inherited in person and through her mother from her deceased brother and sister, Eugene and Eulalie, nor any interest other than such as the grantors had acquired by inheritance from her father, inasmuch as their deed to A. I. Isaacks, if descriptively sufficient, confined their grant to their "inheritance of the estate of Adelard Bourgeois," who was said Margaret's father, so as to include as matter of law only their interest in his community half. Black's Law Dict., verb., Estate, p. 434; Rev. Stats., art. 1696; Butler v. Moody, 63 Texas, 210, 212; O'Conner v. Vineyard, 91 Texas, 488; Roy v. Whittaker, 92 Texas, 357, 358; Wiess v. Goodhue, 98 Texas, 274; Brown v. Pridgen, 56 Texas, 125; Caruth v. Grigsby, 57 Texas, 259.

That the description without the aid of the reference by the grantors to their inheritance from the "estate of Adelar Bourgeois," would be insufficient, see Coker v. Roberts, 71 Texas, 601; Allday v. Whitaker, 66 Texas, 671. Compare with Herman v. Likens, 90 Texas, 448; Curdy v. Stafford, 88 Texas, 123, and Harris v. Broiles (Tex. Civ. App.), 22 S. W. Rep., 421.

That the words "estate of Adelar Bourgeois" can not be rejected under the maxim falsa demonstratio non nocet, because (1) the words are not shown to be false, and (2) if rejected, the rest of the description would be insufficient, see MacManus v. Orkney, 91 Texas, 27; Cartwright v. Trueblood, 90 Texas, 535; 4 Ency. Law, 2d ed., 797-799.

The expression "estate of Adelard Bourgeois," as contained in the deed from the heirs of the daughter Margaret, was at the best for appellees, ambiguous and doubtful of meaning, so that parol or extrinsic evidence was competent of the surrounding circumstances of the parties, including the preliminary negotiations leading up to the contract, to enable the jury to find that the parties meant, by the expression used, to confine the grant to the grantors' shares in their inheritance from their father of his community half of the land. Smith v. Brown, 66 Texas, 545; Milliken v. Callahan, 69 Texas, 210; Tobler v. Willis, 59 Texas, 82; Wright v. Dobie, 3 Texas Civ. App., 194; McHugh v. Gallagher, 1 Texas Civ. App., 196; Masterson v. Heitmann (Texas Civ. App.), 77 S. W. Rep., 986, and cases cited; 1 Elliott's Ev., secs. 597 et seq., and secs. 605-613; 17 Am. & Eng. Ency. of Law, 2d ed., pp. 21-24, and cases cited.

In case of repugnancy or conflict, the particular will prevail over the general, and the first in the premises over the later. Sanger Bros. v. Roberts, 92 Texas, 312; 2 Devlin's Deeds, secs. 1020, 1038, 1039; 4 Am. & Eng. Ency. of Law, 2d ed., 799-802, and cases cited.

That the meaning of the word "estate," under the facts appearing, limited the grants in question to the community half in the property of Adelard Bourgeois, deceased, see Black's Law Dict., verb. Estate, p. 434; Rev. Stats., art. 1696; Butler v. Moody, 63 Texas, 210, 212; O'Conner v. Vineyard, 91 Texas, 488; Roy v. Whittaker, 92 Texas, 357, 358; Wiess v. Goodhue, 98 Texas, 274; Brown v. Pridgen, 56 Texas, 125; Caruth v. Grigsby, 57 Texas, 258; 68 Texas, 237, and 89 Texas, 223; Mulreed v. Clark (Mich.), 74 N. W. Rep., 710; 14 Cyc., 134.

That if the meaning of the expression "estate of Adelard Bourgeois, deceased," did not so limit the grants as matter of law, but was ambiguous upon the extrinsic development of the community relation, then the facts in question, as pleaded, were provable to authorize the jury to find that such, as a matter of fact, was the mutually intended meaning of the expression by the parties to the deeds, see Smith v. Brown, 66 Texas, 545; Milliken v. Callahan, 69 Texas, 210; Tobler v. Willis, 59 Texas, 82; Wright v. Dobie, 3 Texas Civ. App., 194; McHugh v. Gallagher, 1 Texas Civ. App., 196; 17 Am. & Eng. Ency. of Law, 2d ed., pp. 21-24, and cases cited; 1 Elliott's Ev., secs. 597 et seq., and secs. 605-613; Masterson v. Heitman (Tex. Civ. App.), 77 S. W. Rep., 986, and cases cited.

That the circumstances, showing probability of success and threatened danger, present a case for a receiver, at least one with power to "harvest and gather the fruits until the labors of the controversy are over," see Ulman v. Clark, 75 Fed. Rep., 871; Higgins Oil & Fuel Co. v. Snow, 113 Fed. Rep., 433, 441; Sayles' Tex. Civ. Stats., art. 1465; Cotulla v. Am. Freehold Mortg. Co. (Tex. Civ. App.), 86 S. W. Rep., 340; Erhardt v. Boaro, 113 U. S., 537; Bettman v. Harness (W. Va.), 36 L. R. A., 566; Houston Cemetery Co. v. Drew (Tex. Civ. App.), 36 S. W. Rep., 803; Ryder v. Bateman, 93 Fed. Rep., 29, and cases cited; 3 Pomeroy's Eq., sec. 1331, and note; 2 Beach's Mod. Eq. Jur., sec. 933; Jones v. Smith, 40 Fed. Rep., 314; 33 Am. & Eng. Ency. of Law, 2d ed., pp. 1051-1055, and cases cited.

*Stewart, Stewart & Lockett,* for appellees.—Until there is a division of the community between the wife and her husband's heirs, in common parlance, the whole might well be referred to as the estate of the deceased husband, or father, as the case may be. It is quite plain that the words "estate of Adelar Bourgeois," named in the deeds in controversy, are not referred to for the purpose of defining the quantity of interest conveyed, but for the identification of the property upon which the conveyance was intended to act. Nichols v. Stewart, 15 Texas, 226; Henslee v. Henslee, 5 Texas Civ. App., 367; art. 1965 Rev. Stats.; Paschal Dig., art. 1299; Heirs of Shelby Corzine v. Williams, 85 Texas, 506.

The intention of the parties is the true criterion of interpretation of a grant or deed to land. Linney v. Wood, 66 Texas, 22; Swisher v. Grumbles, 18 Texas, 173; Peck v. Hensley, 20 Texas, 677; Chambers v. Brown, 2 S. W. Rep., 519; Rogers v. Jones, 13 Texas Civ.

App., 456; Faulk v. Dashiell, 62 Texas, 646; Hancock v. Butler, 21 Texas, 806.

Of two constructions of deed, resort must be had to one most favorable to the grantee, and the words used in a deed will be taken most strongly against the grantor. Cartwright v. Trueblood, 90 Texas, 538; Henderson v. Beaton, 1 U. C., 24.

GILL, CHIEF JUSTICE.—Eliza West and her coplaintiffs brought this suit in the form of an action of trespass to try title to recover of Geo. H. Hermann and his codefendants, their interest, as heirs of Adelard and Adeline Bourgeois, in 366 acres of land out of the James Strange survey, a designated tract out of the Joseph Dunman labor, and a tract of 704 acres out of the John Brown Jones survey. This is an appeal from a judgment sustaining a general demurrer to the petition.

The plaintiffs pleaded their title specially and set out minutely and in detail the facts upon which they based their asserted right to recover. The petition is quite lengthy, but it is believed that the following concise statement of its substance will suffice for the purposes of this opinion.

Adelard and Adeline Bourgeois were husband and wife and owned as their community property 1,575 acres of land acquired in the name of the husband, comprising separate tracts in three distinct surveys, but adjoining eac'. other and forming together, under the community ownership, one body of land. They were situated on a prong of the San Jacinto River distinct from the river itself. The parcel out of the James Strange survey is part of a grant of 7 1-3 labors of land descriptively referred to in the patent as adjoining the Jones and Dunman surveys and beginning at J. Dunman's northeast corner on the south bank of the San Jacinto River. The part out of the Jones survey is located by the patent on the west prong of the San Jacinto River, and the parcel out of the Joseph Dunman calls to begin on the south bank of the San Jacinto River.

Adelard Bourgeois died intestate in 1860 leaving the land in question, which was all the community estate of himself and his wife. His wife and eleven children survived him. Of those necessary to be mentioned in this opinion, Eugene and Eulalie died intestate and unmarried in 1864 and 1866 respectively. A daughter, Margaret, married Drauzien Henry. She died intestate prior to the death of her mother, and her descendants are numbered among the plaintiffs in this cause.

Another daughter, Natalie, married first, Chebret, afterwards Caruthers, later Bonat. Natalie died intestate. Her several husbands are dead and Melissa Caruthers and Adrian Bonat, two of the plaintiffs herein, are her sole heirs.

Adeline, the widow of Adelard Bourgeois, prior to July 30, 1878, married Gaddy West. She died intestate in 1885, leaving nine children surviving her as also the children of her daughters, Margaret Henry and Natalie. Her second husband died long before the institution of this suit.

No administrations were opened on the estates of any of these decedents, and if any community debts were owing by Adelard Bourgeois they were extinguished many years before the execution by his widow of the deeds hereinafter mentioned under the name of Gavin West.

As against the claims of the plaintiffs the defendants claim under the deeds hereinafter mentioned and, unless those deeds properly construed according to their terms passed all the interests of the named ancestors of plaintiffs, the general demurrer should have been overruled.

On July 30, 1878, Adeline West (formerly Bourgeois) under the name of Gavin West executed and delivered to James Hargrave her deed, the granting clause of which is as follows:

"Grant, bargain, sell and release unto said Jas. Hargrave, his heirs and assigns, all our undivided rights, titles and interests we have as our shares in the estate of Adelard Bourgeois, deceased, in the following described tracts of land, lying in Harris County, Texas, to wit.:"

In this she was joined by her son, Jean Baptiste Bourgeois, and his wife, Celeste. The deed contained a proper description of the three tracts in controversy and was duly placed of record.

On the same day she and her son executed and delivered to the same party a deed containing the following granting clause:

"Do grant, bargain, sell and release unto the said James Hargrave, his heirs and assigns, the following described land and premises, situate in the county of Harris, State of Texas, to wit: All our right, title and interest of our share in the Dunman grant that may, after division, fall to us, and being our part of the Adelard Bourgeois estate."

On December 6, 1887, Salvina Franklin and others, heirs of Margaret Henry, deceased, executed and delivered to A. I. Isaacs their deed in writing, the controlling clause of which is as follows:

"Have granted, sold and conveyed, and by these presents do grant, sell and convey unto A. I. Isaacs of Harris County, Texas, the following described property, lying and being situated in the county of Harris, State of Texas, all our rights, titles, interest, claims or demand in a tract of land of 1,776 acres of land, lying in Harris County, Texas, on the San Jacinto River, and the same being our shares in our inheritance of the estate of *Adelar* Bourgeois."

On March 22, 1873, and while her mother was still alive, the daughter Natalie, reciting herself as acting as heir of her father, made to W. O. Clegg her deed in writing, the controlling clause of which was as follows:

"All my share in a 602 acre survey out of 1-3 of a league originally granted to J. B. Jones, being the remainder of said third of a league unsold at the 18th day of May, 1858, situated on the San Jacinto River, and for more particular description, reference is made to the field notes of the survey; also my share in a labor of land granted by the Republic of Texas to Joseph Dunman, Patent No. 322, and transferred by him to Adelard Bourgeois under

date of April 11, 1857, and recorded in Harris County Records of Deeds, Book 1."

On January 14, 1891, Natalie, joined by her then husband, Henry Bonat, gave a deed in writing to Geo. Hermann, the controlling clause of which is as follows:

"Do grant, bargain, sell and convey unto the said G. H. Hermann, of Harris County, all that certain parcels of land that we inherited from the estate of *Ade* Bourgeois, situated on the San Jacinto River, it being parts of the J. B. Jones ⅓ league and of the James Strange ⅓ league of land in Harris County. The intention of this deed is to convey all the interests that Natalie Bonat, formerly Bourgeois, now owns by inheritance from her parents, now deceased, in the said above described tracts of land."

With respect to the two deeds from Adeline to Hargrave the pleader alleges with particularity that the actual transaction between the. parties contemplated the transfer of only the interest which she had in the community half of the land owned by her husband at his death. That the consideration was in fact $1 per acre; and, the vendors being illiterate, a school teacher was called in to make the calculation. That his estimate was about 120 acres and the consideration paid was a yoke of oxen and a Spanish pony valued at $120. That by the use of the words "estate" of her husband she meant his actual interest in the community, and that the language is legally susceptible of no other meaning, or, if ambiguous, then read in the light of the facts attending the transaction it should be given the meaning alleged.

There are general allegations of the same nature with respect to each of the deeds mentioned, except the deed of 1891, and the sum of the claims generally stated is that by none of the deeds, nor by all taken together, did the entire interests of the plaintiffs' ancestors pass, and that the plaintiffs still own, by inheritance from their mother and the two deceased children, certain undivided interests, which the pleader undertakes to define.

By appropriate assignments of error the questions herein disposed of are duly presented for decision.

It is clear that if the deeds of Salvina Franklin and others, heirs of Margaret Henry, and the two deeds executed by Natalie Bonat passed by their terms the entire interests of those grantors in the land in controversy, including their inheritance from Gavin West, a construction of the two deeds from the widow of Adelard Bourgeois would be unnecessary. We are of the opinion that the Salvina Franklin deed is susceptible of no other construction than that it serves to pass the entire interest of the grantors. Such is the clear purport of its granting clause, and the general statement referring to the estate of Adelar Bourgeois as the source of their title can not be construed as a limitation upon the estate conveyed.

The point is made that the clause last referred to can not be discarded without rendering the description insufficient. It is not necessary to the construction we place upon the deed that it should be discarded. For descriptive purposes it is useful and should be retained, the word estate being obviously used to designate the

lands of which Adelard Bourgeois died possessed. With respect to that particular part of the clause we merely hold that it will not be permitted to lessen the scope of the granting clause.

It seems to be well settled by the weight of authority generally that a general clause erroneously referring to a particular source the title of the interests passed by the granting clause, will not serve to restrict the interests thus conveyed. Green Bay & M. Canal Co. v. Hewitt, 12 N. W. Rep., 382; Devlin on Deeds, sec. 837.

This conclusion eliminates from this suit such of the plaintiffs as claim under Margaret Henry.

Natalie's deed of March 22, 1873, not only did not pass any interest which she subsequently inherited from her mother, but did not purport to convey any interest in the Strange survey. It did, however, in unmistakable terms, convey to the vendee therein whatever interest she then had in the J. B. Jones and the Joseph Dunman. As to the correctness of this conclusion there can be no question, and we do not pause to discuss it further.

Natalie's deed of January 14, 1891, made after her mother's death, affects the Jones and Strange tracts and unquestionably passes whatever title or interest therein which she inherited from her parents. But it does not in terms necessarily pass such interest as she may have inherited from the brother and sister who died in 1864 and 1866.

We have shown that Natalie's deed of 1873 did not and could not pass any interest which she subsequently inherited from her mother, who was then alive. But her mother, by the second deed of date July 30, 1878, in terms equally as unmistakable and clear as the Salvina Franklin deed above referred to, disposed of her entire interest in the Dunman survey.

Thus by the deed of 1891 Natalie parted with all the interest in the Jones and Strange tracts which she inherited from her parents, and she inherited nothing from her mother in the Dunman because of the last above mentioned deed of her mother to Hargrave of date July 30, 1878.

By the deed of 1873 Natalie also parted with all her then interest in the Jones and Dunman which would, of course, include the interest inherited from the two deceased children of Adelard Bourgeois above named.

This leaves in controversy only such interest in the Strange survey as she inherited from these two deceased children, her brother and sister. Whether this small interest also passed by necessary construction will depend upon the interpretation of Natalie's deed of 1891.

Because the Franklin deed eliminates from the cause the heirs of Margaret Henry and the two deeds of Natalie served to pass all her interest which she inherited from either parent, which would include not only the community interest of Adeline Bourgeois, but such as the latter inherited from her deceased children, the construction of her first mentioned deed to Hargrave becomes of no importance to any issue in this cause. It is therefore necessary only to briefly discuss the rules of law which have controlled us

in the construction of the Franklin deed, the Natalie Bonat deeds, and the last deed from Adeline Bourgeois.

In entering upon this inquiry it must be borne in mind that appellants do not assert at this late day the right to correct deeds, or either of them, on the ground that by mistake the language used failed to express the mutual meaning of the parties. The theory of appellants is that the instruments contain language which, when it is sought to apply it to the subject matter, becomes ambiguous of meaning. That for this reason the court may not only rightfully, but is required to look to the facts and conduct of the parties to ascertain the sense in which it was mutually used, and that under the facts alleged the language could be given no other meaning than that contended for by appellants.

The cause having gone off on general demurrer the question must be disposed of as if it had arisen between the original parties to the instruments, for if it be true that the language used was susceptible of more than one meaning then the original parties are bound by the sense in which it was mutually used, and only such interest passed as the meaning placed upon the language by the parties would serve to convey. In order for subsequent purchasers to acquire a greater interest under such conveyance they must show themselves to be innocent purchasers for value without notice of the fact that the original parties had used the language in a sense other than its usual and commonly accepted meaning.

With regard to the meaning of words used in contracts the common or popular standard controls *prima facie.* 4 Wigmore on Evidence, p. 3474. For the purposes of this discussion the only other standard necessary to be noted is the mutual standard. By the term mutual standard is meant the meaning in which the ambiguous word or phrase was used and accepted by both parties to the contract in undertaking to express in writing the terms of the agreement actually made. Wigmore, *supra,* p. 3474. The rule with reference to mutual standards is in many jurisdictions, and especially in this State, subject to the modification that a clear and unambiguous meaning will not be overthrown by resort to parol to determine what the parties actually intended. Wigmore *supra,* p. 3475. It would seem that in such case the remedy of the parties is by suit to correct the deed on the ground that by mistake it failed to express the contract made. The reason given for this doctrine in some of the authorities is that to hold otherwise in the construction of deeds would contravene the statute of frauds. Wigmore, *supra,* p. 3486.

Mr. Wigmore, in his learned and exhaustive article on interpretation of contracts in relation to the facts and circumstances surrounding their execution, repudiates the rule against "disturbing a clear meaning," but concedes not only that it prevails in many jurisdictions, but that when considered in its relation to the statute of frauds it is not without reason for its support. p. 3488, *supra.* The rule unquestionably prevails in this case. Milliken v. Callahan, 69 Texas, 210.

The Franklin deed by express terms undertakes to pass all the

rights, titles, interests, claims and demands in the lands designated. The phrase, "the same being our shares in our inheritance of the estate of Adelar Bourgeois," refers to the interests which the previous language purports to convey, and in the light of the facts was merely an erroneous statement of the source of their title. It does not render the deed ambiguous. The principle previously stated, that such an erroneous reference will not serve to lessen the interests conveyed, is peculiarly applicable, and such a deed is not subject to have its plain meaning varied by parol. Morrison v. Hazard, 99 Texas, 583; Devlin on Deeds, sec. 840.

These principles obviously apply with equal force to the second deed from Adeline Bourgeois.

With reference to the deed of 1891 from Natalie Bonat to Geo. Hermann it can not be said that in any accurate sense she inherited from the estate of Adelard Bourgeois the interest that she acquired from her deceased brother and sister. Their father's death preceded theirs and the title to their interests had distinctly vested in them.

It follows from the rules of construction which we have announced that the phrase "inherited from the estate of Ade Bourgeois" is, considered alone, clearly ambiguous when applied to the facts, and as this deed is not assailed upon the theory that the parties used its terms in any modified sense it should perhaps be construed in favor of the grantee as conveying the largest interest of which the language used is susceptible of passing, but for the concluding clause which explicitly declares what interest is intended to pass. This clause manifestly bears a different relation to the preceding clause from that in the Franklin deed, and leaves but one construction to be placed upon it, read as a whole, and that is, that the interest inherited from the deceased brother and sister did not pass.

The rule that a deed must be construed most strongly against the grantor can have no application where its terms are ambiguous and there is allegation that the parties to the contract used the language in a permissible but special sense.

The word estate has a variety of significations. The property of a living man. The property of a decedent, which passes to his administrator for the payment of the debts of the community, or, in a more general sense, the property of the husband and wife of which the husband dies seized. 16 Cyc., 599-600; 11 Ency. of Law, 359. It might also be appropriately, though not accurately, used to signify the property of a decedent so long as it remained undivided. But in the light of the context the meaning of the word, as used in this deed, can not be thus broadened.

Much of the able briefs of counsel are addressed to the Gavin West deed which we have shown is immaterial. The questions affecting the deeds we have found it necessary to construe have been ably briefed and many authorities cited. We have given them careful consideration but the press of business and the near approach of the close of the term forbids a more extended discussion.

The lands in question are alleged to be chiefly valuable as oil lands, and appellants insist that the trial court should institute at least a qualified receivership to take charge of and conserve the

per cent of the oil output which will fall to the claimants in case they ultimately succeed in this suit. The court unquestionably has the power to appoint a receiver under the facts alleged. Rev. Stat., art. 1465. Whether it should be exercised is a question addressed primarily to his discretion to be exercised in view of the probability or improbability of the success of appellants in this litigation, and many facts which might bear upon the question which this court has no power to ascertain. We therefore hold no more than that the trial court has the power. We do not suggest what course he should pursue.

*Reversed and remanded.*