Mary Gein BURNS et al., Petitioners,

v.

R. C. GOODRICH et al., Respondents.

No. A–10427.

Supreme Court of Texas.

June 23, 1965.

Rehearing Denied July 28, 1965.

Fairchild & Hunt, Center, R. E. Mc-Daniel, Winnie, for petitioners.

Spruiell, Lowry, Potter, Lasater & Guinn, John H. Minton, Jr., Tyler, for respondents.

STEAKLEY, Justice.

Respondents, R. C. Goodrich et al., sued Petitioners, Mary Gein Burns and husband, and their assignees, alleging they were trespassers upon a tract of land of approximately 83⅓ acres in which Respondents claimed to own the entire surface estate. Respondents sought injunctive relief which was granted by the trial court upon a finding that Petitioners owned no interest in the land. Except as reformed in a manner not relevant here, the Court of Civil Appeals affirmed. 382 S.W.2d 501. We hold that Petitioners were not trespassers because the doctrine of after-acquired title made good the title of Mary Gein Burns, and hence that of the Petitioner assignees, to an undivided interest in the land.

The original 200-acre homestead of Lee Lord and wife, Martha J. Lord, included the land in controversy. Lee Lord died intestate and each of six children inherited an undivided 16⅔ acres. A later judgment against the wife burdened her interest with a judgment lien. Thereafter, on May 1, 1938, Mrs. Lord died intestate, and each of the six children inherited an additional undivided 16⅔ acres. Under date of September 26, 1942, Ivy Lord, a son, joined by his wife, conveyed to their daughter, Mary Gein, a Petitioner here, his undivided 33⅓ acres in the 200-acre tract. The provisions of this deed are quoted in the margin.[1] On October 30, 1944, Ivy Lord acquired the

---

1.
"The State of Texas ⌠KNOW ALL MEN BY
"County of Sabine ⌡THESE PRESENTS:
"That we Ivy Lord, and wife, Eliza Lord, of the County of Sabine and State of Texas, for and in consideration of the sum of Ten ($10.00) Dollars cash to us in hand paid and the love and affection that we have for our daughter, Mary Geine Lord, the receipt of which is hereby acknowledged, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Mary Geine Lord, of the County of Sabine and State of Texas, all that certain tract or parcel of land lying and being situated in Sabine County, Texas, and being a portion of the S. H. Morris headright survey, and described as follows, to-wit:
"Being 33⅓ acres undivided in and to 200 acres of said S. H. Morris headright survey, and described as follows:
"Beginning on the bank of the Sabine River at a pine tree marked X about 15 ins. in dia. about 15 or 20 yds. below the mouth of Mill branch. Thence westerly crossing Mill branch to the N.E. corner of the original J. W. Carpenter home tract. Thence South with Carpenter's East line to the N.E. corner of the old gin lot tract. Thence South with the east line of the old gin lot tract and continuing to the street leading to the old Goodloe house and running east and west. Thence east with said street to the Burkeville road. Thence south with the Burkeville road to the N.W. corner of 152 acres owned by the U.S. Forest Service. Thence 79⅛ E. with the north line of said Forest tract 1012 vrs. to corner. Thence up Sabine river to the place of beginning, and containing 200 acres."
"It being understood that the interest hereby conveyed in said 200 acres of land being the interest *inhearited* by the said Ivy Lord, from the estate of his deceased father and mother, Lee Lord, and wife, Mrs. Lee Lord.
"TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Mary Geine Lord, her heirs and assigns forever. And we do hereby bind, ourselves, our heirs, executors and administrators to warrant and forever defend, all and singular the said premises unto the said *Mart* Geine Lord, her heirs and assigns, against every person *whomesoever* lawfully claiming or to claim the same or any part thereof.
"In testimony, witness our signatures, this the 26 day of September, A.D. 1942.
"Ivy Lord
Eliza Lord."

respective undivided 16⅔ acres which two of his brothers had likewise inherited from their father. On May 25, 1945, the judgment lien against the one-half interest of Martha Lord in the 200-acre tract was foreclosed and Mary Gein lost 16⅔ acres which Ivy Lord had previously conveyed to her.[2] Martha Lord's one-half interest in the 200 acres was conveyed to D. B. Speights by sheriff's deed dated August 7, 1945, and on this same date Speights conveyed to Ivy Lord 33⅓ undivided acres out of the interest he purchased at the foreclosure sale. This deed had been lost but its execution, delivery and terms were established in the record and such proof does not involve any application of the Statute of Limitations, Article 5529, Vernon's Annotated Civil Statutes. Speights testified to the fact that the undivided interest of 33⅓ acres conveyed to Ivy Lord was out of the interest purchased by him at the foreclosure sale. It is thus clear that the 33⅓ undivided acres so acquired by Ivy Lord was adverse to the warranty in his deed to Mary Gein to the extent of the undivided 16⅔ acres which he inherited from his mother and which Mary Gein lost in the judgment foreclosure. We need not consider the legal effect, insofar as application of the after-acquired title doctrine is concerned, of the acquisition by Ivy Lord from his brothers of the undivided interests which they had inherited from their father. Respondents are in privity with Ivy Lord by subsequent conveyances.

The doctrine of after-acquired title applies to a love and affection deed from father to son conveying a tract of land encumbered by a valid lien, the father having reacquired the land from the purchaser at foreclosure sale. Robinson v. Douthit, 64 Tex. 101 (1885).

■ The statement of the rule of after-acquired title from 19 Am.Jur. 614, § 16, was quoted with approval in Clark v.

Gauntt, 138 Tex. 558, 161 S.W.2d 270 (1942), and Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878 (1940): "It is a general rule, supported by many authorities, that a deed purporting to convey a fee simple or a lesser definite estate in land and containing covenants of general warranty of title or of ownership will operate to estop the grantor from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him."

In Moore v. Crawford, 130 U.S. 122, 9 S.Ct. 447, 32 L.Ed. 878 (1889), the court cited the statement by Mr. Justice Strong, speaking for the court in Irvine v. Irvine, 9 Wall. 617, 19 L.Ed. 800 (1869), that "It is a general rule that when one makes a deed of land, covenanting therein that he is the owner, and subsequently acquires an outstanding and adverse title, his new acquisition inures to the benefit of his grantee, on the principle of estoppel." In Duhig, the following statement from Smith v. Williams, 44 Mich. 240, 6 N.W. 662 (1880), was quoted with approval: "When one assumes, by his deed, to convey a title, and by any form of assurance obligates himself to protect the grantee in the enjoyment of that which the deed purports to give him, he will not be suffered afterwards to acquire or assert a title, and turn his grantee over to a suit upon his covenants for redress. The short and effectual method of redress is to deny him the liberty of setting up his after-acquired title as against his previous conveyance. This is merely refusing him the countenance and assistance of the courts in breaking the assurance which his covenants had given." See also Cherry v. Farmers Royalty Holding Co., 138 Tex. 576, 160 S.W.2d 908 (1942); Caswell v. Llano Oil Co., 120 Tex. 139, 36 S.W.2d 208 (1931); Baldwin v. Root, 90 Tex. 546, 40 S.W. 3 (1897); and the annotations in 58 A.L.R. 345 and 144 A.L.R. 554.

2. Mary Gein's other undivided interest of 16⅔ acres was conveyed to R. C. Good-rich by guardianship deed dated February 24, 1948, and is not in dispute.

Ivy Lord's deed to Mary Gein granted, sold and conveyed to her "all that certain tract or parcel of land being situated in Sabine County, Texas, and being a portion of the S. H. Morris headright survey, and described as follows, to-wit: Being 33⅓ acres undivided in and to 200 acres of said S. H. Morris headright survey and described as follows: [metes and bounds description]." The habendum clause reads "to have and to hold the above described premises." The warranty covenant is with respect to "the said premises." The question to be decided is whether the deed conveyed and warranted title to an undivided 33⅓ acres of land, or merely to the undivided interest of Ivy Lord inherited by him from his father and mother however large or small this interest may have been, and subject to any and all liens that may have constituted encumbrances thereon. We hold that the deed conveyed and warranted title to the undivided 33⅓ acres of land which Ivy Lord had inherited from his parents. The clear import of the deed when read from its four corners, and particularly of its operative provisions, is to this effect. Cf. Nichols v. Schmittou, 107 Tex. 54, 174 S.W. 283 (1915), White v. Dupree, 91 Tex. 66, 40 S.W. 962 (1897), Richardson v. Levi, 67 Tex. 359, 3 S.W. 444 (1887). The sentence preceding the habendum clause upon which Respondent relies [3] is not an intention clause restricting the granting clause to a conveyance of the grantor's interest, whatever it might be, under which Mary Gein received all that Ivy Lord intended to convey and all that he warranted, i. e., his inherited undivided interest subject to the judgment lien against his mother. To the contrary, the sentence constitutes an identifying reference to the interest in land which was the subject of the conveyance and comports with the granting clause which states in clear and unambiguous terms the conveyance by the grantor of an undivided 33⅓ acres of land.

The Court of Civil Appeals relied principally upon Clark v. Gauntt, supra; upon Wilson v. Wilson, 118 S.W.2d 403 (Tex. Civ.App.1938, no writ hist.), described by the Court as being a case "somewhat similar to the instant case"; and upon the Missouri case of Stoepler v. Silberberg, 220 Mo. 258, 119 S.W. 418 (1909). Each of these cases, as here, required the construction of a deed and, in our opinion, each case is distinguishable. The granting clause of the deed of trust in Clark v. Gauntt conveyed only the "right, title and interest" of the grantor, and the holding was that a conveyance of land limiting the estate granted to the right, title and interest of the grantor is not such a conveyance as will estop the grantor from asserting title to an interest thereafter acquired by him. The deed considered in Wilson read, in part, "That I, Robert Wilson * * * have granted, sold and conveyed * * * unto the said A. C. Irwin and John D. Wilson * * * All that certain tract or parcels of land, situated in Shelby County, Texas, being our one-fifth and entire interest [in] and to the estate of Media Wilson wife of Henry J. Wilson and mother of Robert Wilson, said estate consisting of a [sic] undivided one-half interest in and to the following tracts or parcels of land. * * *" The construction of the deed by the Court was that the grantor did not convey the land; as said by the Court, "Robert did not convey to Irwin and Wilson one-fifth of one-half of tracts Nos. 1 and 2, but only the interest inherited by him through his mother which he described as one-fifth of one-half." So in this respect the case would appear to be within the ambit of Clark v. Gauntt as a "right, title and interest" conveyance. But more distinguishing is the fact that Robert's mother never owned any interest in the two tracts in question, and Robert never acquired any interest through her. The Court held there was no subsequently acquired title to the particular interest which

3. "It being understood that the interest hereby conveyed in said 200 acres of land being the interest inhearited [sic] by the said Ivy Lord, from the estate of his deceased father and mother, Lee Lord, and wife, Mrs. Lee Lord."

the grantor conveyed and the title acquired by the grantor from another source (through his father) did not inure to the benefit of his grantee. The Court in Stoepler recognized that the deed when construed in the light of all its parts "does not attempt or purport to convey and warrant the lot itself but only 'all such right, title and interest' that Frederick Stoepler, at the date of the deed, had in and to said house and lot in Block 177, and such interest therein as he had inherited from his father and devised to him by the will of his father and such as he had inherited from his sisters and brother."

■ The passage of the after-acquired title to Mary Gein is not altered by the fact that Speights (who subsequently conveyed the undivided interest in the land to Ivy Lord) was the purchaser at the foreclosure sale rather than Ivy Lord. Also, under the well settled rule, estoppel exists against Ivy Lord and subsequent purchasers from him with notice of his prior conveyance. Robinson v. Douthit, supra. Respondents are such subsequent purchasers, and the trial court erred in holding that Mary Gein and her assigns owned no interest in the surface of the land, and in enjoining them from occupying any portion thereof.

The judgments of the District Court and the Court of Civil Appeals are reversed, and judgment is here rendered for Petitioners.

SMITH, HAMILTON and POPE, JJ., dissenting.

SMITH, Justice (dissenting).

I respectfully dissent. Goodrich et al., on December 2, 1962, filed this suit in the District Court of Sabine County, Texas, against Mary Burns et al., alleging that they were the owners of 83⅓ acres of land, a part of a tract of 200 acres out of the S. H. Morris survey; that the defendants Mary Gein Burns and husband, Joe Burns, and Ivy Lord and wife, Eliza Lord, entered upon the land unlawfully and without permission from the plaintiffs, the owners; that they made use of the residence thereon with "full knowledge that they are without any right or title to any portion of said premises."

Since the Court has failed to take cognizance of the complete record in this case, it becomes necessary to make an analysis of the chain of title to demonstrate that the daughter has failed to establish an interest in the 83⅓ acres involved in this suit. The record show that Ivy Lord and Mary Gein Burns and husband are trespassers. Not only that, the record reveals that the Speights' judgment hereinafter mentioned was the result of a plan on the part of Ivy Lord to clear the Martha Lord 100 acres of the lien which was valid on May 1, 1938, the date of the death of Martha Lord. The record shows that D. B. Speights purchased the judgment lien against the Martha Lord 100 acres at the request of Ivy Lord. At the suggestion of Ivy Lord, Speights included all interested parties as defendants in a foreclosure suit. Mary Gein Lord, now Burns, was made a party defendant. Mary Gein recovered an interest in the land. How can Mary Gein and Ivy under the after-acquired title rule regain a title which they cleared of all liens and later by mesne conveyances passed to Goodrich et al.? Ivy Lord admitted that the title, so far as liens against the Martha Lord 100 acres was concerned, was cleared. Ivy Lord admitted that, thereafter, the entire 200 acres was partitioned and he and his daughter acquired 83⅓ acres "on the west side" of the original 200-acre Lord tract. Ivy Lord admitted that he sold 66⅔ acres out of the 83⅓ acres and "I got the money for it." Sixteen and two-thirds acres were sold by Ivy Lord, as Guardian of Mary Gein Lord, through the probate court. Mary Gein testified that she went upon the land in 1962 because "the land was mine." She testified that an attorney told her she had a right to enter upon the land; that this advice was given after the attor-

ney "looked at my deed." This deed was identified as the September, 1942, deed. "He advised me that I had a perfect legal right to come in and take possession of it if I wanted it"; that "he did not" make any investigation of the title. Mary Gein testified that she asked her father about the land. "He said that he had sold some land." Mary Gein on cross-examination, testified further as follows:

"Q And he (Ivy) didn't tell you that he, as your guardian, sold that to King Goodrich in 1947?

"A No, he didn't.

"Q 1948?

"A No.

"Q Why didn't you ask him if he'd sold it to somebody, that particular land?

"A Because if he had sold it he would have told me."

Mary Gein's cause of action, if any, was one against her father. Instead of bringing suit against her father, she now appears in this Court, not asserting a claim against her father, but asserting ownership of the very title conveyed to Goodrich et al. The record reflects a perfect chain of title into Goodrich et al. beginning with the sheriff's deed dated August 7, 1945, to 'D. B. Speights. The record reflects a title which was free and clear of the Martha Lord judgment lien. I agree with Goodrich et al. that the 1942 deed conveyed only the interest inherited from his mother. What Ivy Lord had inherited from his father and mother was all Ivy Lord owned in September, 1942. Ivy Lord and his successors are not estopped to assert other interests in the 200 acres subsequently acquired from an inconsistent source. This is especially true under the record here presented. Mary Gein Burns and her husband were not in possession of the land. An examination of this record does not reveal an intention on the part of Ivy Lord to convey to Mary Gein more land than he owned through in-

heritance. There is no proof in this case that the title failed to the 16⅔ acres Ivy Lord inherited from his mother. Under the record in this case, the after-acquired title rule cannot apply so as to award to Mary Gein an interest in the 83⅓ acres acquired by Ivy Lord and Mary Gein in the partition agreement, dated August 22, 1945. The parties to this partition deed were the record owners of the 200 acres. Ownership was recognized to be as follows:

"Whereas, D. B. Speights and B. F. Chambers * * *, and Ivy Lord and Mary Gein Lord, minor * * * are the joint owners of 200 acres * * *, less certain minerals thereunder, * * and said 200 acres has been partitioned and divided into two tracts, the said Ivy Lord and Mary Gein Lord owning an undivided 83⅓ acres, and the said D. B. Speights and B. F. Chambers owning an undivided 116⅔ acres, * * *."

There is no proof that the 16⅔ Martha Lord interest which the Court now awards to Mary Gein is a part of the 83⅓ acres set aside to Ivy and Mary Gein Lord. The partition deed awarded Ivy Lord and Mary Gein Lord, jointly, a specific tract of 83⅓ acres on the west side of the 200-acre tract. Ivy Lord subsequently claimed 66⅔ acres and represented that Mary Gein owned 16⅔ interest. I repeat that Mary Gein cannot set aside the subsequent deeds executed by Ivy Lord individually and as Guardian of Mary Gein, under the after-acquired title doctrine. The theory advanced by the Court, if adopted, will cause a disturbance of many land titles in Texas.

In the future no purchaser will be secure in his title even though he has a title opinion from a competent lawyer certifying that his prospective grantor has a good and merchantable title. The case of Anderson v. Casey-Swasey Company, 103 Tex. 466, 129 S.W. 349 (1910), in principle, supports my position. The facts in that case were these: One D. J. Anderson and his mother, S. J. Anderson, executed a deed of trust

covering 160 acres, in a 320-acre survey. At the time of the execution of the deed of trust, D. J. Anderson had no interest in the 320 acres. In fact, he had conveyed to his brother whatever interest he expected to inherit as an heir of his mother. Thereafter D. J. Anderson purchased 58 acres of land from a half-brother. This 58 acres was awarded to D. J. after the death of his mother. Later Casey-Swasey Company purchased this land under foreclosure sale authorized by the deed of trust. Suit was filed against D. J. for title to the land. The Court held that the after-acquired title doctrine did not apply since there was no proof in the record that the 58 acres was a part of the 160 acres described in the Deed of Trust. The Court held:

"In order that estoppel should inure to the benefit of the Casey-Swasey Company it must appear that the 58 acres was a part of the 160-acre undivided interest conveyed by the deed of trust; otherwise there would be no antagonism between the title acquired by D. J. Anderson in the 58 acres and the title attempted to be conveyed by him in the 160 acres."

Our case is even stronger than Anderson's, inasmuch as there is absolutely no showing in the record that Ivy Lord ever reacquired the interest which he inherited from his mother, the same interest conveyed to Mary Gein in 1942. The only interest Ivy Lord acquired subsequent to September, 1942, was the interest he and Mary Gein obtained after the Speights' judgment and the partition agreement wherein both Ivy and Mary Gein jointly acquired a tract of 83⅓ acres. Ivy Lord and Mary Gein sought to defeat the Goodrich et al., title by claiming that Goodrich et al., failed to establish by proper proof that the deed from Speights to Ivy Lord had been lost. They failed in this regard, and the Court has so held.

A deed from Ivy Lord to Sturgis Lumber Company, together with a deed executed by Ivy Lord, Guardian of the estate of Mary Gein, establishes by competent proof that Ivy and his daughter, Mary Gein, conveyed all interest that they owned and that they retained no title which would entitle them to possession of the 83⅓ acres in suit or any part thereof. The defendants contend that Mary Gein is entitled to recover 16⅔ acres under the after-acquired title rule. The defendants' contention being that the title she lost under the foreclosure proceedings should be made good out of the Lee Lord ⅔₁₂ths interest or, in the alternative, the title should be made good out of the 33⅓ acres acquired by Ivy Lord in the deed executed after the foreclosure by Speights. Mary Gein cannot recover under either theory.

The after-acquired title rule is a part of the law of estoppel. The estoppel in the after-acquired title cases arises from the assertion of ownership made by the grantor in the covenant of warranty, express or implied, or in other recitals in the deed. Such assertion is a representation that the grantor owns the land or the estate or interest to which it relates, and having thus represented the fact of ownership, the grantor is estopped to deny that fact. The Court, in the case of Clark v. Gauntt, 138 Tex. 558, 161 S.W.2d 270 (1942), in an opinion written by Justice Smedley, stated that:

"* * * the clearest statements of it [the after-acquired title rule] is that made in American Jurisprudence as follows: 'It is a general rule, supported by many authorities, that a deed purporting to convey a fee simple or a lesser definite estate in land and containing covenants of general warranty of title or of ownership will operate to estop the grantor from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him.'"

However, before the rule as to after-acquired title can be held to inure to the benefit of Mary Gein, it must be first shown that Ivy Lord's after-acquired title was a part

of the land conveyed in the September, 1942, deed; otherwise, there is no conflict between the title acquired by him in the subsequent transaction and the title conveyed to Mary Gein Lord in 1942. See Anderson v. Casey-Swasey Co., supra.

The facts are not sufficient to show that Ivy Lord has asserted title to any part of the Martha Lord 16⅔ acres conveyed to Mary Gein. The solution of the problem in the case turns not only on the status of the title held by Ivy Lord in the 200-acre survey at the time of the conveyance to Mary Gein Lord, but also on the source and nature of the title acquired by Ivy Lord subsequent to such conveyance. At the time Ivy Lord executed the deed conveying to Mary Gein Lord, a minor, 33⅓ acres, a part of the 200 acres, he conveyed the only interest he owned. The title to the 200 acres after the death of each parent was just as distinct in the heirs of the parents without partition as it would have been after partition. See Anderson v. Casey-Swasey Co., supra. Breaking it down a step further, the title to the Martha Lord 100 acres was just as distinct in the heirs as though it had been partitioned. The record shows that Ivy Lord by the 1942 deed conveyed all of the land he owned in the 200-acre survey. The 16⅔ acres was burdened with the judgment lien or incumbrance heretofore mentioned; but that lien was removed by the Speights' judgment and foreclosure sale. Where a grantor has undertaken to convey a specified interest in a tract of land and there is no proof in the record that the interest conveyed has been lost by the grantee because of an incumbrance upon the land, the grantor should

not be held to be required to apply other and different subsequently acquired interests to satisfy a grantee who has bought a restricted specified interest burdened with an incumbrance. This holding, in principle, is supported by the case of Wilson v. Wilson, Tex.Civ.App., 118 S.W.2d 403 (1938), no wr. hist., but cited with approval in the case of Clark v. Gauntt, supra, and is also supported by the holding of the Supreme Court of Missouri in the case of Stoepler v. Silberbert, 220 Mo. 258, 119 S.W. 418 (1909). I have no quarrel with cases cited by the defendants which hold that the warranty clause in a deed warrants the title of the grantee, nor do I question the rule announced in Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878 (1940), which the defendants say "prohibits the *assertion* of title in contradiction or breach of warranty." The record in this case simply does not call for a holding that there has been a breach of warranty in the sense that Ivy Lord has denied the representation of ownership of the Martha Lord 16⅔ acres conveyed in the 1942 warranty deed by the subsequent acquisition of the title to other interests or shares of the 200 acres inherited by the six children of Lee and Martha Lord.

The defendants rely upon the provisions of Articles 1297 [1] and 1298,[2] Vernon's Annotated Statutes to support their contention that the after-acquired title rule estops Ivy Lord from passing his afer-acquired interest to anyone other than his grantee, Mary Gein Lord. These statutes cannot be invoked against the Ivy Lord grantees or their successors in title.

[1] "From the use of the word 'grant' or 'convey,' in any conveyance by which an estate of inheritance or fee simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs or assigns, are implied, unless restrained by express terms contained in such conveyance:
  "1. That previous to the time of the execution of such conveyance the grantor has not conveyed the same estate, or any

right, title or interest therein, to any person other than the grantee.
  "2. That such estate is at the time of the execution of such conveyance free from incumbrances.
  "Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance."

[2] "The term 'incumbrances' includes taxes, assessments and all liens upon real property."

The defendants' argument that the case of City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448 (1947), a case which deals with the statutory covenant against incumbrances, as provided by Article 1297, supra, supports their theory is without merit. The contention would be sound in a proceeding by Mary Gein against Ivy Lord.

The Court has not only erroneously construed the September, 1942, deed, but it has failed to recognize that there is no evidence in this record that the land involved in this suit is a part of the 100-acre Martha Lord interest. Furthermore, the Court fails to recognize that the lien against the one-half interest formerly owned by Martha Lord was extinguished prior to the partition deed between the owners of the 200 acres formerly owned by the father and mother of Ivy Lord. The Court also fails to recognize that there is no proof whatsoever that the undivided interest acquired by Ivy Lord by virtue of the Speights deed as well as the specific 83⅓ acres acquired by Ivy and Mary Gein jointly in the deed of partition was any part of the interest which Ivy Lord had previously inherited from his mother. The fact that Ivy Lord, through these subsequently executed instruments, acquired a greater interest in the 200 acres than the 16⅔ interest conveyed in the September, 1942, deed is not controlling. Admittedly, Mary Gein also acquired in the partition deed a greater interest than she claims was lost, but she has never challenged her father's actions in this or any other suit. In fact, the record shows that at the time of entering upon the land as a trespasser, she had asserted no adverse claim to the land while it was occupied by the present owners and their predecessors in title. C. K. Goodrich built a house on the 83⅓ acres in 1948 and lived there until his death in August, 1962. After his death the house was vacant and locks were placed on the doors. Sometime after August, 1962, and before the petition for injunction was filed, the house was opened and Mary Gein Burns and her husband were occupying the premises, all without the permission or con-

sent of the record owners. Under this record, the trial court properly found that the Burns family and Ivy Lord and wife, all of whom are defendants in this suit had "no right of occupancy of any portion of the surface of said lands."

The injunction, as modified by the Court of Civil Appeals, should remain in full force and effect. Therefore, the judgment of the Court of Civil Appeals should be affirmed.

POPE, Justice (dissenting).

I respectfully dissent. Ivy Lord inherited from his mother 16⅔ acres of land, charged with a lien. By his 1942 deed he conveyed his inheritance to his daughter, Mary Gein. This intent to convey what he inherited was written into the deed in a separate special intention clause. When he conveyed what he inherited, and when his grantee received what he inherited, Ivy Lord could not thereafter be estopped. The opinion of the majority holds that there was a breach of warranty upon the foreclosure of the judgment lien against the 16⅔ acres that Ivy Lord conveyed to Mary Gein and that the doctrine of after-acquired title should apply. I would hold that the evident intent of the grantor was to convey an undivided interest out of a described tract to the extent of his inheritance and that his grantee received exactly that. The grantee took the land with the debt, because that was what Ivy Lord inherited. These are the words that Ivy Lord put in his deed:

"It being understood that the interest hereby conveyed in said 200 acres of land being the interest inhearited by the said Ivy Lord, from the estate of his deceased father and mother, Lee Lord, and wife, Mrs. Lee Lord."

Those words mean something. They are not idle recitals. The opinion of the majority reaches a result identical with that which would be compelled if the clause had been left out of the deed. To me, the words are purposeful, clear, and limiting. I would

hold that Ivy Lord tried to tell us that he inherited something from his mother and that he intended to convey what he inherited, no more and no less.

"It being understood," was Ivy Lord's opening phrase. Those words mean "It is agreed." Stanley v. Spann, 21 S.W.2d 305, 308, (Tex.Civ.App.1929, writ dism.). The thing that the grantor and grantee agreed upon was that the grantor conveyed "the interest inherited by the said Ivy Lord * * *" An inheritance is the interest in real property which the law, immediately on the ancestor's decease, casts on the heir. Barclay v. Cameron, 25 Tex. 233, 241 (1860). Inherent in the term is the idea that the heir takes the infirmities of the inheritance along with the strength, the assets as well as the debts. Ivy Lord inherited 16⅔ acres from his father free of debt and a like share from his mother charged with debt. He conveyed what he inherited. When Mary Gein received all of that, as she did, she received all that the grantor and grantee intended by the deed.

Intention clauses should command attention. They serve useful purposes. Sometimes they describe and clarify. Germany v. Turner, 132 Tex. 491, 123 S.W.2d 874 (1939); Barfield v. W. C. Belcher Land Mortgage Co., 257 S.W. 1095, 1097 (Tex. Com.App.1924); Cullers v. Platt, 81 Tex. 258, 16 S.W. 1003, 1005 (1891); Hitchler v. Scanlan, 15 Tex.Civ.App. 40, 39 S.W. 633, 636 (1897, writ ref.). Sometimes they enlarge a grant or description or even convert what otherwise would be a quitclaim into a conveyance of land. Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442 (1935); Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940 (1915). Accord, Arrowwood v. Blount, Tex.Civ.App., 294 S.W. 616 (1927), affirmed 121 Tex. 52, 41 S.W.2d 412 (1931); Lauchheimer v. Saunders, 27 Tex.Civ.App. 484, 65 S.W. 500, 501 (1901, no writ). Sometimes they limit and restrict. Whatever the category, as Judge Smedley stated in Sun Oil Co. v. Burns, supra, intention clauses cannot be overlooked. He wrote in that case: "The clause declaring the intention of the grantor was, because of its plain language and manifest purpose, given the effect of enlarging both the granting clause and the terms of the description, and of converting what without it would have been a quitclaim deed into a conveyance of the land. * * *."

An intention clause can enlarge and broaden a grant. In Cook v. Smith, supra, such a clause overcame the effect of operative words found in the granting, habendum and warranty clauses which would have made the instrument a pure quitclaim. In that case the grantor "bargained, sold, released and forever quitclaimed * * * all my right, title and interest * * *." The court stated that the habendum clause also contained the words of a quitclaim. In treating the deed in its entirety, however, the court seized upon the grantor's intention clause to reach a result directly opposite that which would have been reached from looking at all the rest of the deed. These are the words that converted a quitclaim deed into a conveyance of land: " * * * and it is my intention here now to convey to the said A. A. Neff all the real estate that I own in said town of Paducah in Cottle County, Texas, whether it is set out above or not." Sun Oil Co. v. Burns, supra, is equally significant, for there too, it was the intention clause that converted the instrument into a conveyance of land.

Intention clauses which reveal the grantor's intent to limit and restrict are entitled to equal respect. It is not unusual to include terms of agreement in a deed other than the premises, habendum and warranty clauses. In Fleming v. Ashcroft, 142 Tex. 41, 175 S.W.2d 401 (1943) the deed conveyed and warranted one-half interest in the oil under lands described by metes and bounds. Following the description and before the habendum and warranty clauses several special agreements were stated. One of them was: "It Is Understood that the sale of this royalty is for a period of fifteen years from February 19th, 1924, under the terms and provisions of oil and gas

lease heretofore given by grantor herein as to the production of oil and gas, and at the expiration of said fifteen years the title to the minerals conveyed herein is to revert, without further notice, to grantor herein." The Supreme Court found no repugnancy between this clear intent and other provisions of the deed, for "To hold otherwise would result in denying any effect whatsoever to the fifteen-year limitation." The court restated the rule that intention must be gathered from a fair consideration of the whole instrument and that the construction given it should harmonize with the terms of the deed, including its scope, subject-matter, and purpose. Rio Bravo Oil v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 1087, 85 A.L.R. 391.

The majority distinguishes Wilson v. Wilson, 118 S.W.2d 403 (Tex.Civ.App. 1938, no writ) and Stoepler v. Silberberg, 220 Mo. 258, 119 S.W. 418 (1909). The point in those cases and others like them, is that the courts did not disregard the grantors' special intention clauses. The clauses gave expression to the grantors' intent to limit and were respected. The following similar clauses have served as expressions of intent which courts have considered helpful in arriving at intent:

"* * * All that certain tract or parcels of land, situated in Shelby, County, Texas, being our one-fifth and entire interest and to the estate of Media Wilson wife of Henry J. Wilson and mother of Robert Wilson, said estate consisting of a undivided one-half interest in and to the following tracts or parcels of land, being a part of the J. Cordova four leagues situated in Shelby County, Texas, * * *" (Description of the three tracts follows). Wilson v. Wilson, supra.

"* * * This deed is to embrace all the interest in the aforesaid real estate that I inherited from my father, Bernard Stoepler, deceased, and devised to me in his last will and testament and also such interest that I inherited from my sisters, Mrs. Zurmuehlen, deceased, and Mary Stoepler, deceased, and also my brother, August Stoepler, deceased." Stoepler v. Silberberg, supra.

"* * * all my interest in and to all property real, personal or mixed to which I was entitled at the death of my father Charles Hale as heir and one of his seven children who survived him or to which I may be entitled in his said estate as such child or heir at law * * *" describing property. Hale v. Hale, 93 S.W.2d 535 (Tex.Civ.App. 1936, writ ref.).

"* * * It being my intention to convey all my interest in and to said tracts of land by reason of being a child and legal heir of James Spangler, deceased." Spangler v. Spangler, 42 S.W.2d 826 (Tex.Civ.App., 1931, no writ).

"* * * Do grant, bargain, sell, and convey unto the said G. H. Hermann, of Harris County, all that certain parcels of land that we inherited from the estate of Ade Bourgeois, situated on the San Jacinto River, it being parts of the J. B. Jones ⅓ league and of the James Strange ⅓ league of land in Harris County. The intention of this deed is to convey all the interests that Matalie Bonat, formerly Bourgeois, now owns by inheritance from her parents, now deceased, in the said above described tracts of land." West v. Hermann, 47 Tex.Civ.App. 131, 104 S.W. 428 (1907, no writ).

It is my opinion that Ivy Lord's intent, expressed in his 1942 deed to Mary Gein, has been thwarted. Intention should be ascertained from a consideration of all parts of the instrument. Garrett v. Dils Company, 157 Tex. 92, 299 S.W.2d 904 (1957); Benskin v. Barksdale, 246 S.W. 360 (Tex.Com.App.1923). This entire controversy centers upon Ivy Lord's intent as expressed by his deed, but the one paragraph in the deed which demonstrates that intent is the one that has been treated as

purposeless and meaningless. "The stone which the builders rejected, the same is become the head of the corner." I would affirm.

I respectfully dissent.

HAMILTON, J., joins in this dissent.